**Betty BANG and Laura Bang, Plaintiffs,**

v.

**UTOPIA RESTAURANT
et al., Defendants.**

**No. 95 Civ. 3452.**

United States District Court,
S.D. New York.

April 24, 1996.

---

Gilbert L. Offenhartz, New York City, for plaintiffs.

Stuart M. Herz, Garden City, New York, for Defendants George Tsopelas and Peter Tsoukalas.

David M. Slater, Slater & Associates, P.C., New York City, for Defendants George Tsopelas and Peter Tsoukalas.

MUKASEY, District Judge.

Laura and Betty Bang have sued a restaurant, its three owners, a police officer, and the City of New York for interfering with their civil rights. 42 U.S.C. § 1983 (1988). Two of the restaurant owners, George Tsopelas and Peter Tsoukalas, have moved to dismiss the claims against them for insufficient service of process and failure to state a claim upon which relief can be granted. Fed.

R.Civ.P. 12(b)(5), 12(b)(6). For the reasons stated below, the motion is denied.

## I.

The allegations in plaintiffs' Amended Complaint are as follows: Plaintiff Laura Bang suffers from Kallman's Disease, a severe, disfiguring glandular disorder recognized as a disability under the Americans With Disabilities Act, 42 U.S.C. § 12101 et seq. (Am.Compl. ¶ 4) Plaintiff Betty Bang is a relative of Laura Bang. (*Id.* ¶ 3) Defendants George Tsopelas and Peter Tsoukalas are co-owners of defendant Utopia Restaurant, which is located on Manhattan's Upper West Side. (*Id.* ¶ 7)

On several occasions prior to February 1994, Tsopelas and his employees subjected Laura Bang to various forms of harassment while she dined at Utopia. (*Id.* ¶¶ 10–15) Tsoukalas often witnessed the harassment. (*Id.* ¶ 15) On February 12, 1994, both plaintiffs entered Utopia and sat at a table in the restaurant's non-smoking section. (*Id.* ¶ 23) Plaintiffs waited to be served, but none of the waiters on duty at that time approached their table. (*Id.* ¶ 23) After some time, Tsopelas ordered Laura Bang to leave the premises and shouted an epithet at her when she declined to do so. (*Id.* ¶ 24)

Minutes later, Betty Bang went to the restaurant's counter, ordered and received two cups of coffee and some pastries, and returned to the table. (*Id.* ¶ 25) A short time later, Tsopelas placed a telephone call, apparently to the police. (*Id.* ¶ 31) About 30 minutes later, two officers arrived and engaged Tsopelas in a conversation lasting 20 minutes. (*Id.* ¶ 32) One of those officers was Officer Dean, who also is a defendant in this action. (*Id.* ¶ 33) As Tsopelas and the officers conversed, Laura Bang remained seated, quietly working on a crossword puzzle. (*Id.* ¶ 34)

Eventually Laura Bang prepared to leave the restaurant, at which time the conversation between Tsopelas and the officers abruptly ended. (*Id.* ¶ 36) Without saying anything, the officers approached her, and Officer Dean placed his hand on one of her arms. (*Id.* ¶ 37) Laura Bang sardonically asked Dean, "Is this what you do for your coffee and donuts?" (*Id.* ¶ 38) Dean took offense to the remark and "forcefully pulled Laura Bang's arm way over her head and then down hard and then handcuffed her in the back and then jerked and pulled both her handcuffed hands nearly up to her shoulders while she screamed in pain." (*Id.* ¶ 39) The officers violently removed Laura Bang from the restaurant and shoved her into a police cruiser, which took her to the 20th Precinct station house. (*Id.* ¶¶ 40–41)

At the police station, Officer Dean escorted Laura Bang to a holding area and handcuffed her to a wire grating above her head, leaving her hanging in an uncomfortable position for two hours. (*Id.* ¶¶ 44–44A) After two hours, Laura Bang was formally charged with trespass and disorderly conduct, and was released. (*Id.* ¶ 45)

Plaintiffs allege that Betty Bang endured a similar ordeal. Shortly after Laura Bang was taken away in the police cruiser, Betty Bang was arrested by Dean's unidentified partner. (*Id.* ¶ 58) Betty Bang believes that her arrest was for the sole purpose of intimidation; she suspects that the officers feared she would be a witness against them in a legal action. (*Id.* ¶ 66) Like Laura Bang, Betty Bang was driven to the 20th Precinct, handcuffed by Dean to a wire grating in a holding area, and released after about two hours. (*Id.* ¶¶ 60–62A) Betty Bang was charged only with criminal trespass. (*Id.* ¶ 63)

All criminal charges against plaintiffs eventually were dismissed. (*Id.* ¶¶ 47, 65) Plaintiffs filed this action in May 1995. Plaintiffs seek damages under § 1983 based on denial of rights guaranteed by the Americans With Disabilities Act. 42 U.S.C. §§ 12182, 12203 (1988 and Supp. V 1993). Plaintiffs also assert pendent state law tort claims for false arrest, malicious prosecution, false imprisonment, and assault and battery. The Amended Complaint does not specify which defendants are charged with which torts.

Tsopelas and Tsoukalas have moved to dismiss on two grounds. First, they argue that the Amended Complaint fails to state § 1983 claims against them because there is no alle-

gation that either defendant acted jointly with the police. Second, each defendant claims that he was not properly served with process.

## II.

■ Section 1983 imposes liability only on persons who act "under color of state law." However, a private citizen may be deemed to be a state actor when he is "a willful participant in joint action with the State or its agents." *Dennis v. Sparks*, 449 U.S. 24, 27–28, 101 S.Ct. 183, 186, 66 L.Ed.2d 185 (1980). To establish joint action, a plaintiff must show that the private citizen and the state official shared a common unlawful goal; the true state actor and the jointly acting private party must agree to deprive the plaintiff of rights guaranteed by federal law. *Cunningham v. Southlake Center for Mental Health, Inc.*, 924 F.2d 106, 107–08 (7th Cir.1991).

■ Plaintiffs allege in the Amended Complaint (1) that Tsopelas called the police, (2) that 30 minutes later, two police officers arrived and engaged Tsopelas in a 20–minute conversation, and (3) that Officer Dean arrested Laura Bang after the conversation ended abruptly. (*Id.* ¶¶ 31–32) Calling the police, alone, does not establish joint action between the police and the private caller. *Newman v. Bloomingdale's*, 543 F.Supp. 1029, 1032 (S.D.N.Y.1982). However, drawing all reasonable inferences in plaintiffs' favor, joint action between Tsopelas and the officers could be inferred here from the 20–minute conversation and the timing of the arrests.

Plaintiffs expressly allege that Tsopelas caused the false arrests of plaintiffs for the purpose of interfering with their exercise of civil rights. (Am.Compl. ¶ 1) Plaintiffs could establish that the officers shared that unlawful goal if they could demonstrate that the officers knew that the arrests for trespass and disorderly conduct were unjustified. Under New York law, a person is guilty of criminal trespass when she "knowingly enters or remains unlawfully in or upon a premises." N.Y.Penal Law § 140.05 (McKinney 1988). It is not unlawful to enter or remain in a restaurant that is open to the

general public unless one "defies a lawful order not to enter or remain, personally communicated . . . by the owner of such premises or other authorized person." *Id.* § 140.00. An order to leave motivated by contempt for a disability is an "unlawful discriminatory practice" under New York law, and therefore is not a "lawful order not to enter or remain." N.Y.Exec.Law §§ 292.9, 296 (McKinney 1988); *Warren v. Byrne*, 699 F.2d 95, 98 (2d Cir.1983); *People v. Tuchinsky*, 100 Misc.2d 521, 419 N.Y.S.2d 843, 844 (Dist.Ct. Suffolk County 1979). To be guilty of disorderly conduct under New York law, one must intend to cause "public inconvenience, annoyance or alarm" and engage in a fight, make unreasonable noise, use obscene language, disturb a lawful assembly, obstruct traffic, disobey a lawful police order to disperse, or create a hazardous condition. N.Y.Penal Law § 240.20 (McKinney 1989).

■ The Amended Complaint alleges that Utopia is open to the public and that Laura Bang sat quietly at a table waiting to be served throughout her visit to the restaurant. Tsopelas once ordered her to leave the premises before the police officers arrived, but that order was not a lawful order to leave because it allegedly was motivated by contempt for her disability. Accordingly, the Amended Complaint alleges facts that tend to establish the absence of probable cause to arrest Laura Bang for trespass or disorderly conduct. Similarly, accepting the facts alleged in the complaint as true, Betty Bang did nothing to warrant arrest.

During the 20–minute conversation preceding the arrests, the police officers had the opportunity to observe that there was no probable cause to arrest either plaintiff. Under the circumstances, it would be reasonable to infer that during the conversation, Tsopelas urged the officers to arrest both plaintiffs, without probable cause, in furtherance of what became the shared goal of depriving plaintiffs of federally guaranteed rights. *See* 42 U.S.C. § 12182 ("No person shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public ac-

commodation"); *id.* § 12203(b) ("It shall be unlawful to coerce, intimidate, threaten or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter").

If the officers arrested plaintiffs for offenses committed before the officers' arrival at Utopia, in reasonable reliance on statements by the restaurant owners, it would be difficult to infer joint action because under that view of events, it would not appear that the officers shared the unlawful goal of Tsopelas. But that story is implausible, because the officers waited 20 minutes before arresting Laura Bang. If there were facts establishing probable cause to arrest plaintiffs for criminal trespass when the officers arrived at Utopia, it should not have taken 20 minutes for the restaurant owners to explain those facts to the officers. If Tsopelas represented that an offense already had been committed, and the officers credited his story, the officers could have made a prompt arrest after a brief discussion with Tsopelas. Moreover, the officers would be held in that situation to a duty to make at least a minimal inquiry to confirm the accuracy of Tsopelas' allegations, perhaps by asking the Bangs if they had heard and understood an earlier order to leave. Plaintiffs allege that the officers made no such inquiry. *Cf. Moore v. Marketplace Restaurant, Inc.,* 754 F.2d 1336, 1352 (7th Cir.1985) (when police, pursuant to pre-arranged plan, agree to arrest anyone designated by private party without making independent inquiry as to probable cause for arrest, private party is a state actor).

Construing the Amended Complaint liberally, Fed.R.Civ.P. 8(f), and drawing all reasonable inferences from the facts therein alleged in favor of plaintiffs, *Allen v. West-Point–Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir.1991), the joint action allegations clear the low hurdle of Rule 12(b)(6).

▪ Plaintiffs do not allege any link whatsoever between defendant Tsoukalas and the police. Tsoukalas makes only a cameo appearance in the Amended Complaint—plaintiffs vaguely charge him with witnessing and "assenting to" the harassment of Laura Bang by others prior to February 1994. (Am. Compl. ¶ 15) The Amended Complaint does not even allege that Tsoukalas was present at the restaurant on February 12, 1994.

Nevertheless, it would be inappropriate to dismiss Tsoukalas as a defendant at this time because he might still be held to answer for the liabilities ·of the restaurant. Plaintiffs have sued the restaurant owners both in their individual capacities and as owners of the restaurant. (*Id.* at 1) (caption) Plaintiffs allege that Utopia Restaurant was a corporation at the time of the events giving rise to their claims, that the corporation was later dissolved, and that the business was resumed as a partnership. (*Id.* ¶ 6) It is not clear whether the partnership has taken on the liabilities of the corporation.

## III.

Plaintiffs' attorney attempted personal, in-hand service on both defendants at their restaurant. In affidavits, the parties offer differing accounts of his attempts to serve process.

### A. *Plaintiffs' Account of Service of Process*

Plaintiffs' version is as follows: On July 22, 1995, plaintiffs' attorney Gilbert Offenhartz learned that Tsopelas was on duty at Utopia and went to the restaurant at about 2:15 p.m. Offenhartz met his clients outside the door. After Laura and Betty Bang looked inside and identified Tsopelas, Offenhartz entered the restaurant and ordered a pastry. Betty Bang entered the restaurant shortly afterwards and again indicated to Offenhartz which person was Tsopelas. Some time later, Offenhartz approached Tsopelas at the restaurant's counter. Offenhartz inquired, "Mr. Tsopelas?" Tsopelas answered, "Yes. What do you want?" Offenhartz reached inside his pocket to pull out the process papers, stated, "I am serving you and the restaurant with a federal summons and complaint," and attempted to hand over the papers. Tsopelas said "I don't want them." Offenhartz put the process on a table in front

of Tsopelas and declared, "Here, you've been served. You better give this to your lawyer."

Offenhartz then walked over to another man and asked him if he was Peter Tsoukalas. The man, waiter Andrew Pappas, said that he was not.

That evening at around 10:45 p.m., one of the Bangs called Offenhartz to inform him that Tsoukalas was on duty at Utopia. Offenhartz again met his clients outside the restaurant. The Bangs pointed inside and identified the man at the cash register as Tsoukalas. Offenhartz walked in, approached the register and asked, "Mr. Tsoukalas?" The man at the register acknowledged the identification and Offenhartz personally served him with process. Tsoukalas took the papers and put them under the counter at exactly 11:25 p.m. (Offenhartz Aff. at 1–6)

### B. *Defendants' Account of Service of Process*

Defendants' version of the attempts at service is entirely different. Tsopelas explains that "the fellow that tried to serve us rudely barged into the restaurant, shouted 'Here,' and dropped the Complaint onto a table where none of the officers of the corporation were present." Tsopelas claims in his affidavit that he was not served and that he has never received a copy of the complaint. (Tsopelas Aff. ¶ 3) Oddly, in the same affidavit, Tsopelas discusses specific allegations in the document he claims he has never seen. (*Id.* ¶ 4)

Waiter Andrew Pappas states that a short while later, Offenhartz served him with the summons intended for Tsoukalas. (Pappas Aff. ¶ 2) Tsoukalas says that he was working at the counter on the evening of July 22 and that Offenhartz walked in, said nothing, dropped certain unidentified documents on the counter, and left. (Tsoukalas Aff. ¶ 3)

\*　　\*　　\*

The two stories are irreconcilable. Because there is a factual dispute as to whether service was properly effected, a traverse hearing will be scheduled to resolve this issue.

\*　　\*　　\*

For the reasons set forth above, defendants' motion to dismiss is denied.

SO ORDERED.