745 So.2d 968 (1999)
BARTON PROTECTIVE SERVICES, INC., Appellant,
v.
John F. FABER and Eddie C. Worlds, III, City of Pompano Beach, Alex Nunes, Jose Interian and California Retired Public Servants Association, Appellees.
No. 97-3949.
District Court of Appeal of Florida, Fourth District.
July 21, 1999.
*970 Rosemary B. Wilder and Richard A. Sherman of Richard A. Sherman, P.A., Fort Lauderdale and J. Frank Beauchamp, III, of Carman, Beauchamp & Sang, P.A., Deerfield Beach, for appellant.
J. David Huskey, Jr. and C. Edward McGee, Jr. of McGee, Gainey & Huskey, P.A., Fort Lauderdale, for Appellees John F. Faber and Eddie C. Worlds.
Robert H. Schwartz and Jonathan M. Matzner of Adorno & Zeder, P.A., Fort Lauderdale, for Appellees City of Pompano Beach, Alex Nunes and Jose Interian.
TAYLOR, J.
In this appeal following a jury verdict for plaintiffs in a civil rights action under 42 U.S.C. § 1983, the jury found a shopping mall security company liable for false arrest. Barton Protective Services, Inc. (Barton) contends that the trial court erred in denying its motion for a directed verdict, judgment notwithstanding the verdict, and new trial, because the evidence was insufficient to show that Barton acted under "color of law" within the meaning of § 1983. Barton also appeals, along with plaintiffs on cross-appeal, the trial court's apportionment of fault among the defendants for damages, attorneys' fees, and costs.
Plaintiffs John Faber and Eddie Worlds worked together as car salesmen at a dealership in Lighthouse Point, Florida. On December 20, 1990, they left work to go Christmas shopping at the Pompano Square Mall. After making some purchases for their families, they bought a set of golf club covers and a golf glove for their sales manager. While standing in line at a gift wrap station in the mall, the men discovered that they had mistakenly bought a right-hand glove instead of a left-hand glove for their manager and decided to exchange it. Worlds, who is black, agreed to return to the Champs store to exchange it while Faber held their place in the gift wrap line. As Worlds was rushing through the mall, he was approached by Don Declare, the chief of security for Barton, a private security company hired by the mall's owner. Declare shouted at Worlds and asked him why he was running in the mall. Worlds replied that he was exchanging a gift and that he was hurrying to get back to work. Worlds returned to the store, exchanged the gift, and left the store to join Faber. On his return trip to the gift wrap station, Worlds passed Declare, who again asked Worlds why he was *971 running. Worlds answered him as before. Declare continued to watch Worlds and summoned two uniformed security guards to assist him. When Worlds joined Faber in the gift wrap line, Declare and the two uniformed security guards approached him. For the third time, Declare questioned Worlds about running in the mall. Worlds again explained they were in a hurry because they were on a work break and apologized for any misunderstanding.[1] Declare asked Worlds his name, but, in spite of Worlds' response, he continued to ask his name several times, refusing to believe him. Finally, after telling Declare his true name four times, Worlds gave him a fictitious name, which Declare accepted. To avoid any further problems, Faber volunteered to forego getting their gifts wrapped and just gather their purchases and leave the mall. Declare left the area, but directed his two security guards, Joe Papesca and Lamar Hill, to follow Worlds and Faber as they exited the mall.
In the meantime, Declare contacted a third security guard, Guido D'Angelo, and instructed him to summon two uniformed Pompano Beach Police officers to a "disturbance" outside the Sears store. Declare then stationed himself near the Sears mall entrance to intercept Worlds and Faber as they left the mall. When the two men arrived at Sears, Declare approached them, pushed Worlds in his chest, and told them they had to be detained. At that moment, Pompano Beach Police Officers Alex Nunes and Jose Interian approached, accompanied by D'Angelo. Shouting profanities and slurs at the men, the police officers ordered plaintiffs to remain in the mall. They informed Worlds that he was going to be arrested. Faber, whose conduct was described as being similar to that of a "blind child with no tongue," asked why his co-worker was being arrested and protested their treatment as unnecessary. In response, Nunes told Faber to "shut the f___ up" and poked him in his chest. Faber was then pushed back toward the glass of a storefront. When he asked why he was being hit, Officer Nunes grabbed Faber by the neck, spun him around, and threw him head-first into a Santa Claus display located outside the Sears store. Then Declare and the two officers jumped on top of Faber while he was still lying face down in the display on the floor. Faber was handcuffed and placed under arrest. Interian detained Worlds and told him he was going to jail also. Worlds calmly offered his hands in submission. With their Christmas packages strewn about them on the floor, Faber and Worlds were led out of the mall in handcuffs and transported to the Pompano Beach Police station.
Worlds was charged with disorderly conduct, a misdemeanor. He was able to post bond and get released directly from the police station in less than an hour. Faber, on the other hand, was charged with disorderly conduct and resisting arrest with violence, a third degree felony. He was transported from the station to the main jail adjacent to the Broward County courthouse, where he was booked, fingerprinted, photographed, strip-searched, and placed into the general inmate population before he was released on bond several hours later. All criminal charges against the plaintiffs were eventually dismissed.
Worlds and Faber sued the City of Pompano Beach (City) and Officers Nunes and Interian for malicious prosecution and false arrest. They also sued the City, the officers, and Barton for a civil rights violation of 42 U.S.C. § 1983. At the close of the plaintiffs' evidence, Barton moved for a directed verdict on the § 1983 claim, asserting that the plaintiffs failed to establish that Barton, a private entity, acted under color of state law during the detention and arrest of plaintiffs. The trial court denied the motion for directed verdict. The jury determined that both officers used excessive force and lacked probable cause in arresting Faber and were liable to him for malicious prosecution. *972 The jury also found that Barton acted as a willful participant in a joint activity with the officers in effectuating Faber's false arrest. They awarded Faber $225,000 in compensatory damages and apportioned fault among the defendants. As to Worlds, the jury found that both officers used excessive force in falsely arresting him and that Barton was a willful participant in World's arrest. Worlds was awarded $100,000 in damages.
Based on our review of the record, we conclude that the trial court did not err in denying Barton's motion for directed verdict or judgment notwithstanding the verdict. A motion for directed verdict should be granted only when the evidence, viewed in the light most favorable to the non-moving party, shows that a jury could not reasonably differ as to the existence of a material fact and that the movant is entitled to a judgment as a matter of law. Briscoe Enters. Ltd. of Fla. III. v. Palm Beach County, 623 So.2d 560 (Fla. 4th DCA 1993). If there is any evidence to support a possible verdict for the nonmoving party, a directed verdict is improper. Gold, Vann & White, P.A. v. DeBerry, 639 So.2d 47 (Fla. 4th DCA 1994). Stated another way, "a trial court may direct a verdict against a plaintiff only if no evidence is introduced on which the jury may lawfully find for the plaintiff." Id. at 51, (quoting Amoroso v. Samuel Friedland Family Enters., 604 So.2d 827, 831 (Fla. 4th DCA 1992)).
In order to recover on a § 1983 claim, a plaintiff must prove two elements: (1) that he was deprived of a right "secured by the Constitution and laws" of the United States; and (2) that the person depriving the plaintiff of that right acted "under color of state law." 42 U.S.C. § 1983. Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); Flagg Bros. v. Brooks, 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978); Scott v. Dixon, 720 F.2d 1542, 1545 (11th Cir.1983), cert. denied, 469 U.S. 832, 105 S.Ct. 122, 83 L.Ed.2d 64 (1984). The right to be free from unlawful arrest and imprisonment is such a protected right under the Fourth and Fourteenth Amendments, a violation of which may form the basis for a § 1983 claim. See Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); Duriso v. K-Mart No. 4195, Div. of S.S. Kresge Co., 559 F.2d 1274 (5th Cir.1977). Under the Fourth Amendment, a person has the right not to be arrested unless probable cause justifies the arrest. See Baker v. McCollan, 443 U.S. 137, 143, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979); Wilson v. Attaway, 757 F.2d 1227, 1235 (11th Cir.1985). In this case, it was determined that plaintiffs were arrested without probable cause.
Regarding the "under color of state law" element, a plaintiff is entitled to relief against a private citizen if he can prove that the private citizen was "a willful participant in joint activity with the state or its agents." Dennis v. Sparks, 449 U.S. 24, 27-28, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980). To establish joint action, a plaintiff must show that the private party and the state official shared a common unlawful goal and agreed on a joint course of action in furtherance of that goal. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).[2]
*973 Private persons can be held liable in a 42 U.S.C. § 1983 action if they act in concert with state officials in depriving the plaintiff of his constitutional rights. See Bendiburg v. Dempsey, 909 F.2d 463, 469 (11th Cir.1990) (citing Lugar v. Edmondson Oil Co., 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982) and Dennis v. Sparks, 449 U.S. 24, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980)). In Bendiburg, the plaintiff sued various state employees and private doctors for civil rights violations and battery in connection with the medical treatment of his son. The trial court granted the private defendants' motions for summary judgment on the civil rights claims. In reversing the district court, the eleventh circuit stated that the court "wrongfully required [the plaintiff] to produce a `smoking gun' when nothing more than an `understanding' and `willful participation' between private and state defendants is necessary to show the kind of joint action that will subject private parties to § 1983 liability." Id. at 469. See also Motes v. Myers, 810 F.2d 1055, 1060 (11th Cir.1987)( a private party's abuse of the arrest warrant process to settle a private dispute gives rise to a cause of action under § 1983); Losch v. Borough of Parkesburg, Pa., 736 F.2d 903, 907 (3rd Cir.1984)(a defendant's misuse of the criminal process through the initiation of criminal charges against a plaintiff without probable cause or for reason of personal animosity is clearly actionable under 42 U.S.C. § 1983).
Barton cites a number of cases for the proposition that the mere filing of a complaint or communication of information to officials which leads to an arrest is not enough to convert a private party's acts into state action. Sims v. Jefferson Downs Racing Ass'n, 778 F.2d 1068 (5th Cir. 1985); Lomax v. Davis, 571 F.Supp. 805 (N.D.Miss.1983); Davis v. Carson Pirie Scott & Co., 530 F.Supp. 799 (N.D.Ill. 1982); White v. Scrivner Corp., 594 F.2d 140 (5th Cir.1979). These cases establish that calling the police, alone, does not demonstrate joint action between the police and the private caller. However, contrary to Barton's assertion that it "only reported a disturbance to the police," the evidence shows that Barton, through its managing agent, Declare, went far beyond that. He directed one of his security guards, D'Angelo, to secure the police officers' presence at a "disturbance outside Sears," although no disturbance had yet occurred. He instructed two other security guards to follow plaintiffs to make sure that they stayed on their course and exited the mall. He then positioned himself to intercept plaintiffs as they were leaving the mall at the Sears entrance. When plaintiffs were about to exit the mall, Declare stopped them from leaving and detained them for the police officers' arrival, even though he knew they had not committed any crime. As the officers approached, Declare physically assaulted Worlds, in an apparent effort to provoke a response and create a "disturbance" for the officers to witness. Without conducting an investigation or making even a minimal inquiry into the situation, the officers promptly aligned themselves with Declare and escalated the confrontation. This sequence of events suggests that the police officers made the decision to detain and arrest plaintiffs based on Declare's prior communication to them, without any independent assessment of the accuracy of Declare's allegations. Finally, Declare assisted Officer Nunes in handcuffing Faber by holding him down despite the fact that Faber was not offering any physical resistance. We find that this evidence was sufficient to support a jury's conclusion that Barton was a willing participant in joint activity with state agents. See Murray v. Wal-Mart, Inc., 874 F.2d 555 (8th Cir.1989); Duriso v. K-Mart *974 No. 4195, Div. of S.S. Kresge Co., 559 F.2d 1274 (5th Cir.1977); Smith v. Brookshire Bros., Inc., 519 F.2d 93 (5th Cir. 1975). See also Bang v. Utopia Restaurant, 923 F.Supp. 46 (S.D.N.Y.1996). Similar to scenarios in the above cited cases, evidence was presented in this case relating to an arrangement or plan between the security company and the local police to "work in concert" in maintaining safety and security in the mall. As the Eleventh Circuit Court of Appeals commented in Motes v. Myers, "[I]t would be anomalous indeed to hold a public official liable for deprivation of a party's constitutional rights under color of state law, and deny relief when a private party sets in action pursuant to state law a similar deprivation of liberty or property." Id. at 1058. We find that the trial court did not err in denying Barton's Motion for Directed Verdict and Motion for Judgment Notwithstanding the Verdict.
Barton also contends that the trial court erred in denying its requested special jury instructions on the state action issue and in giving the following jury instruction and question (interrogatory # 3) on the verdict form:
In order for Mr. WORLDS and/or Mr. FABER to prevail on their claims for civil rights violations pursuant to 42 U.S.C. § 1983 against BARTON PROTECTIVE SERVICES, INC., they must prove by a preponderance of the evidence that BARTON PROTECTIVE SERVICES, INC., acted "under color of state law."
In order to establish that a private corporation acts under color of state law, the Plaintiffs must prove by a preponderance of the evidence that there was joint action between BARTON PROTECTIVE SERVICES, INC. and ALEX NUNEZ and JOSE INTERIAN. In order to establish joint action, the Plaintiffs must prove by a preponderance of the evidence that:
BARTON was a willful participant in a joint action with ALEX NUNEZ and JOSE INTERIAN in effectuating a false arrest of the Plaintiffs ...
"Did BARTON PROTECTIVE SERVICES, INC. act as willful participant in a joint activity with Officers NUNEZ and INTERIAN in effectuating a false arrest of Mr. WORLDS?"
YES_____ NO_____
We find that the above challenged instruction and interrogatory accurately reflect the law on this issue, as discussed above. See Bendiburg v. Dempsey; Gilbert v. Sears, Roebuck and Co. A trial court is accorded broad discretion in formulating appropriate jury instructions and its decision should not be reversed unless the error complained of resulted in a miscarriage of justice or the instruction was reasonably calculated to confuse or mislead the jury. See Reyka v. Halifax Hosp. Dist., 657 So.2d 967 (Fla. 5th DCA 1995). A decision to give or withhold a jury instruction is to be reviewed under the abuse of discretion standard of review. See Bozeman v. State, 714 So.2d 570, 572 (Fla. 1st DCA 1998). The party defending the instructions on appeal must show that the requested instructions accurately stated the applicable law, the facts supported giving the instruction, and that the instruction was necessary in order to allow the jury to properly resolve all the issues in the case. See Reyka at 967. If the jury instructions, as a whole, fairly state the applicable law to the jury, the failure to give a particular instruction will not be an error. CSX Transp., Inc., v. Whittler, 584 So.2d 579 (5th DCA 1991). See also Schreiber v. Walt Disney World, Co., 389 So.2d 1040 (Fla. 5th DCA 1980) (each party is entitled to have the jury instructed on his theory of the case).
At trial, plaintiffs proceeded on the theory of Barton's willful participation in joint action with state agents. The jury instructions accurately reflected applicable law on this theory of recovery under § 1983. Significantly, the instructions came directly from language in a case *975 heavily relied upon by Barton at trial and on appeal, Collins v. Womancare, 878 F.2d 1145 (9th Cir.1989). Collins held that for recovery against a private party on a § 1983 civil rights violation, the private party must be a willful participant in the state action or jointly engaged with state officials. Contrary to Barton's contention, Collins did not hold that a plaintiff must demonstrate a conspiracy between the private entity and the state agent to establish joint action. Rather, Collins held that showing a conspiracy was merely "one way" to meet the joint action requirement for § 1983 purposes. Id. at 1153. Hence, the trial court did not err in declining Barton's request to include a conspiracy element in the jury instructions. Viewing, as a whole, the allegations in the complaint, the evidence adduced at trial, and the applicable law on the plaintiffs' theory of the case, we find that the trial court did not err in instructing the jury on the elements of the civil rights claim or in submitting Interrogatory # 3 on the verdict form.
Turning next to Barton's third point on appeal, we agree with Barton and the plaintiffs, on cross-appeal, that the trial court erred in submitting a verdict form to the jury that allowed them to apportion fault among the defendants, Barton, Nunes and Interian. Because the civil rights claims under § 1983 are based on intentional torts, the defendants are jointly and severally liable for the judgment under both federal and state law. The trial court submitted the following Interrogatory to the jury:
7. What is total percentage of fault among the following parties for the damages suffered by and awarded to Mr. Faber?

Alex Nunes _____%
Jose Interian _____%
Barton Protective Services, Inc. _____%

The same interrogatory was submitted on the verdict form for Worlds. In apportioning fault, the jury determined that Barton was 98% liable and Nunes and Interian were each 1% liable. Barton and plaintiffs argue that this apportionment interrogatory is in direct and express conflict with section 768.81, Florida Statutes, and Merrill Crossings Associates v. McDonald, 705 So.2d 560 (Fla.1997). In Merrill Crossings, the supreme court held that section 768.81, Florida Statutes, requiring that judgments against parties in negligence cases be based on comparative fault rather than joint and several liability, does not apply to an action based upon an intentional tort. It, therefore, concluded that the trial court did not err in excluding a nonparty tortfeasor from the verdict form in the action, which alleged that the negligence of the shopping center owner and its tenant in failing to provide adequate security resulted in an intentional torti.e., shooting of the plaintiff/patron by an unknown assailant in the parking lot. The court distinguished Fabre v. Marin, 623 So.2d 1182 (Fla.1993), which involved two negligent tortfeasors whose negligence combined to produce harm rather than tortfeasors whose negligence gave rise to or permitted an intentional tortfeasor's action. Id. at 562.
Similarly, in this case, where all the defendants were sued under § 1983 for intentional acts in connection with an unlawful arrest, joint and several liability was appropriate. See Finch v. City of Vernon, 877 F.2d 1497 (11th Cir.1989). In Finch, a former city police chief brought a § 1983 action against the city for wrongful discharge in retaliation for his exercise of First Amendment rights. The eleventh circuit found that the district court correctly held the city jointly and severally liable in accordance with the federal rule of damages and noted that the same result would have been proper under Florida law applicable to intentional tortfeasors. The Finch court further observed that this result was consistent with the policy underlying § 1983 to fully compensate for injuries sustained as a result of violations of constitutional rights. Id. at 1503 n. 2
However, the defendants, the City, Nunes, and Interian, argue that Missouri *976 v. Jenkins, 495 U.S. 33, 110 S.Ct. 1651, 109 L.Ed.2d 31 (1990) dictates a different result and establishes comparative fault, as opposed to joint and several liability, as the rule of damages in § 1983 cases. We disagree with defendants' interpretation of the holding in Jenkins. In Missouri v. Jenkins, an action brought under 42 U.S.C. § 1983, the trial court found that the Kansas City, Missouri School District (KCMSD) and the State of Missouri had operated a segregated school system and that they were jointly and severally liable. In reviewing the trial court's order fashioning a desegregation plan and financing methods to implement it, the Eighth Circuit Court of Appeals opined that the State should pay for most of the desegregation costs under the principle that "apportionment of damages between the State and KCMSD according to fault was supported by the doctrine of comparative fault which had been adopted by the Missouri Supreme Court in Gustafson v. Benda, 661 S.W.2d 11 (1983)." Id. at 1657, 495 U.S. 33. On remand, the district court held that the State and KCMSD were 75% and 25% at fault, respectively, and ordered them to share the costs accordingly. To ensure complete funding of the remedy, however, the court held the two tortfeasors jointly and severally liable for the costs of the plan. Significantly, the Supreme Court did not disturb this finding of joint and several liability, even while recognizing that it was within the discretion of the district judge to require each tortfeasor to pay its share of the remedy if it could as part of the equitable power of the court. Id. at 1665, 495 U.S. 33.
We are not persuaded by defendants' argument that Missouri v. Jenkins "undermines the reasoning in Finch v. City of Vernon, 877 F.2d 1497 (11th Cir. 1989), as to the continued applicability of the doctrine of joint and several liability." First, we note that the Jenkins ruling with regard to comparative fault was based on Missouri's state law. As we discussed earlier, comparative fault principles simply do not apply to intentional torts under Florida law. Second, the focus of the Jenkins case was not upon the issue of comparative fault versus joint and several liability in civil rights cases but rather on the power of a federal district court to direct a local government body (KCMDS) to levy taxes to fund a desegregation order issued by the federal district court. To the limited extent that the issue of apportionment of fault arose in that case, it did so in the context of the court's equitable power to allow for contribution among joint and several tortfeasors to "ensure complete funding of the remedy" in accomplishing the goal of 42 U.S.C. § 1983 for full compensation to victims of violations of constitutional rights.
We conclude that the defendants herein should be held jointly and severally liable for the damages suffered by the plaintiffs. For the same reasons, we determine that the defendants should be jointly and severally liable for the trial court's award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988. See, e.g. Corder v. Gates, 947 F.2d 374 (9th Cir.1991).
Finally, Barton contends that the trial court erred in denying its motion for a new trial because the jury verdict was against the manifest weight of the evidence. We disagree. A motion for a new trial is directed to the sound discretion of the trial judge. Allstate Ins. Co. v. Manasse, 707 So.2d 1110 (Fla.1998). Based on our review of the evidence presented at trial, we are unable to say that no reasonable person would agree with this ruling. Applying the reasonableness test, as we are required to do, we determine that the trial court did not abuse its discretion in denying Barton's motion for a new trial.
For the reasons stated above, we affirm the judgment below but reverse the apportionment of fault rulings and remand this case to the trial court for entry of judgments reflecting the joint and several liability of the defendants for damages and attorneys' fees and costs consistent with this opinion.
*977 AFFIRMED in part, REVERSED in part, and REMANDED for proceedings consistent with this opinion.
GROSS, J., and OWEN, WILLIAM C., Jr., Senior Judge, concur.
NOTES
[1] Some witnesses testified that Worlds was just "briskly walking" through the mall.
[2] Adickes has been described as "the last in a line of cases in which restaurateurs and others used the trespass or vagrancy laws to enforce racial segregation long after it became clear that the state may not discriminate on account of race." Gramenos v. Jewel Co., Inc., 797 F.2d 432, 434 (7th Cir.1986). According to Gramenos:

Adickes ... has become the basis for a rule that shopkeepers are engaged in "state action" when they strike a deal with the police under which the police simply carry out the shopkeepers' directions. If the police promise to arrest anyone the shopkeeper designates, then the shopkeeper is exercising the state's function and is treated as if he were the state. This approach is the basis for the finding of state action in Duriso and Smith and among many other cases. Moore v. Marketplace Restaurant, 754 F.2d 1352-53 [(7th Cir. 1985)]; Lusby v. T.G. & Y. Stores, Inc., 749 F.2d 1423 (10th Cir. 1984), vacated in part, 474 U.S. 805, 106 S.Ct. 40, 88 L.Ed.2d 33 (1985); and Davis v. Carson Pirie Scott & Co., 530 F.Supp. 799 (N.D.Ill.1982).
Id. at 435.