[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-15679

_____

D.C. Docket No. 9:13-cv-80050-KLR

TROY K. CONRAD,

     Petitioner - Appellant,

versus

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,

     Respondent - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(September 8, 2016)

Before JORDAN, ROSENBAUM, and SILER,[*] Circuit Judges.

SILER, Circuit Judge:

In 2003, Florida prisoner Troy Conrad was convicted of second-degree murder and attempted second-degree murder. Ten years later, he filed the instant habeas proceeding pursuant to 28 U.S.C. § 2254, asserting that his Sixth Amendment right to effective assistance of counsel was violated when his trial counsel failed to object to a portion of the jury instructions on self-defense. Conrad argues that the forcible-felony provision of the instructions was circular, confusing, and misleading, and that it impermissibly negated his sole defense at trial—a self-defense justification.

The magistrate judge found no error in the provision of the forcible-felony instruction and recommended that Conrad's petition be denied. The magistrate judge further concluded that even if the instruction were erroneous, any error would not constitute fundamental error on appeal and therefore was not prejudicial under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984). The district court adopted the magistrate judge's report and recommendations. Conrad now appeals the district court's denial of his petition for writ of habeas corpus. We AFFIRM.

---

[*] Honorable Eugene E. Siler, Jr., United States Circuit Judge for the Sixth Circuit, sitting by designation.

2

**BACKGROUND**

The State of Florida's ("the State") indictment alleged that on January 21, 2002, Conrad shot with a firearm Edgar Padilla, who ultimately died from his complications, and Carmelite Lefevre, who survived. The State charged Conrad with second-degree murder with a firearm and attempted second-degree murder with a firearm, both in violation of Florida law. During Conrad's 2003 trial, the State theorized that Conrad, a drug addict, killed Padilla, his dealer, in an effort to obtain crack cocaine. It further alleged that Conrad attempted to kill Lefevre because she had witnessed Padilla's murder.

At trial, Conrad admitted shooting Padilla and Lefevre but asserted that he did so only in self-defense. He explained that he regularly purchased cocaine from Padilla, who had threatened that if Conrad "play[ed] with" Padilla's money, Padilla would shoot him. Conrad testified that on the day of the shootings, he wanted to buy crack cocaine but owed Padilla approximately two hundred dollars for past purchases. When he paged Padilla that morning, Conrad possessed only twenty dollars, but he assured Padilla that he would repay the remainder of his debt by that afternoon. Padilla responded that if Conrad failed to produce the money, Padilla would "bust a cap" in Conrad—that is, shoot him. In Conrad's mind, Padilla's threat was not baseless: he knew that Padilla sometimes carried a gun wrapped in a towel and was a member of a violent gang.

3

Later that day, Padilla arrived at Conrad's home unannounced and demanded the money. When Conrad told him that he did not have it, Padilla became angry, grabbed Conrad by the shirt, and yelled at him to get the money or else Padilla would "bust a cap." Conrad observed that Padilla had a towel with him at the time; he assumed that Padilla's gun was wrapped inside the towel.

Padilla then placed Conrad in the back seat of Padilla's car and handed the towel to Lefevre, who was seated in the front passenger seat. Conrad recognized Lefevre, who had been present during previous drug transactions with Padilla. Conrad agreed to ask his mother for the money that Padilla demanded. When she refused, Padilla became livid. Conrad stated that he nodded off in the car and awoke to Padilla's holding a gun. He heard Padilla say to Lefevre, "I ought to off this cracker." At this time, Lefevre was holding the towel. Believing he was about to be killed, Conrad reached forward, grabbed the gun from Padilla, and fired four times.

After firing the last shot, Conrad scrambled to his house, told his girlfriend to hide, and smeared ketchup onto his body so that he could pretend to be dead if Padilla retaliated. He maintained that he had no time to think at the time of the shooting but simply acted in fear for his life. When police arrived, Conrad willingly came out of his house but did not disclose that he had shot Padilla and Lefevre. Instead, he told the officers that a rival drug dealer had shot them. At

trial, Conrad emphasized that when he grabbed Padilla's gun, he believed that there was also a gun wrapped in the towel that Lefevre was holding and that he had no time to hesitate or think.

The court's instructions to the jury discussed the law governing self-defense as a legal defense to murder and attempted murder. As to the forcible-felony exception to the self-defense justification, the court explained:

> [T]he use of force likely to cause death or great bodily harm is not justified if you find, one, Troy Conrad was attempting to commit, committing or escaping after the commission of an aggravated battery and/or aggravated assault . . . .

Neither party objected to this instruction.

The jury found Conrad guilty of second-degree murder of Padilla and attempted second-degree murder of Lefevre. The court denied Conrad's motion for a new trial and sentenced him to a term of life imprisonment for the second-degree murder conviction and a concurrent fifteen-year term for the attempted second-degree murder conviction. The state appellate court affirmed Conrad's convictions.

After his initial efforts to obtain post-conviction relief failed, Conrad filed a second post-conviction motion in state court, asserting for the first time that counsel's failure to object to the forcible-felony instruction constituted ineffective

assistance.  The court denied Conrad's motion, and the Florida Fourth District Court of Appeal affirmed.

Conrad then filed this § 2254 action in federal court, maintaining that he was denied effective assistance in light of his trial counsel's failure to object to the forcible-felony instruction.  A magistrate judge recommended that Conrad's petition be denied without a hearing.  The district court adopted the magistrate's report and recommendation over Conrad's objection.  Conrad appealed to this court, and we granted a certificate of appealability as to whether the district court erred in rejecting Conrad's claim.

## ANALYSIS

### I.    Standard of review

"We review *de novo* a district court's grant or denial of a habeas corpus petition."  *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010).  We also review de novo a district court's legal conclusions and its resolution of mixed questions of law and fact.  *Wellons v. Warden*, 695 F.3d 1202, 1206 (11th Cir. 2012).  Because Conrad's petition was filed after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Conrad must establish not only that his Sixth Amendment claim is meritorious, but also that the state court's adjudication of that claim:

> (1) resulted in a decision that was contrary to, or
>     involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Madison v. Comm'r, Ala. Dep't of Corr.*, 677 F.3d 1333, 1336 (11th Cir. 2012). The Supreme Court has explained,

> The pivotal question [in a § 2554(d) claim] is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Williams v. Taylor*, 529 U.S. 362, 410, 120 S. Ct. 1495, 1498 (2000). A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Harrington v. Richter*, 562 U.S. 86, 101, 131 S. Ct. 770, 778 (2011).

Conrad, therefore, confronts a "difficult" burden. *Id.* at 105. "The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Id.* (internal quotation marks and citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that

counsel satisfied *Strickland*'s deferential standard." *Id.*; *see also Hill v. Humphrey*, 662 F.3d 1335, 1343 (11th Cir. 2011) (en banc) ("Under AEDPA, our review of a final state habeas decision is greatly circumscribed and is highly deferential to the state courts." (internal quotation marks omitted)).

The merits of Conrad's ineffective-assistance-of-counsel claim are "squarely governed" by *Strickland*, 466 U.S. 668; *see Williams v. Taylor*, 529 U.S. 362, 390, 120 S. Ct. 1495, 1497 (2000).  Pursuant to *Strickland*, Conrad must demonstrate that "counsel's performance was deficient" and that "the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687.  To establish ineffectiveness, Conrad "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688.  To establish prejudice, he must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

But because AEDPA deference also governs Conrad's claims, he must prove not only a reasonable probability of a more favorable outcome, but that no reasonable jurist could have reached the state court's conclusion.  If fair-minded jurists could disagree as to that decision's soundness, the state court's application of *Strickland* cannot be said to be unreasonable, and AEDPA precludes the grant of

8

habeas relief.  *Evans v. Sec'y, Dep't of Corrs.*, 703 F.3d 1316, 1326-27 (11th Cir. 2013) (en banc).

As Conrad has failed to satisfy *Strickland*'s first prong, we need not reach the second prong.  *See Strickland*, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one.").  We find that Conrad's ineffective-assistance claim is unpersuasive.

**II.    The relevant statute and the effect of *Giles***

Conrad maintains that the state court's decision was "contrary to" or unreasonably applied *Strickland*.  *See* § 2254(d)(1).  He asserts that the state court "misunderstood its own law" in its rejection of his ineffective-assistance claim. According to Conrad, the forcible-felony instruction is proper only where the defendant has committed an independent forcible felony *other than* the one for which he claims self-defense.

The instruction at issue is based on Florida Statute § 776.041(1) (2002), which provides:

> The [self-defense] justification described in the preceding sections of this chapter is not available to a person who:
>
> (1) Is attempting to commit, committing, or escaping after the   commission of, a forcible felony . . . .

9

*See Williams v. State*, 901 So. 2d 899, 900 (Fla. Dist. Ct. App. 2005) (noting that the instruction concerning situations when the defense of justifiable use of force is unavailable is drawn from Fla. Stat. § 776.041); *see also* Fla. Std. Jury Instr. (Crim.) 3.6(f).

In 2002—the year prior to Conrad's trial—the Florida Court of Appeal addressed a jury instruction that arose from this statute. *Giles v. State*, 831 So. 2d 1263 (Fla. Dist. Ct. App. 2002), held that the forcible-felony instruction is proper only where the forcible felony is a separate and independent one. Giles was convicted of aggravated battery after a fight with his opponent in a poker game resulted in Giles hitting the man in the mouth with a brick. *Id.* at 1264. The trial court instructed the jury, "The use of force not likely to cause death or great bodily harm is not justifiable if you find that the defendant was attempting to commit, committing or escaping after the commission of an aggravated battery." *Id.* Accordingly, the court's jury instruction on self-defense provided:

> The defendant would be justified in using force not likely to cause death or great bodily harm against [the victim] if the following two facts were proved.
>
> Number one, the defendant must have reasonably believed that such conduct was necessary to defend himself against [the victim's] imminent use of unlawful force against the defendant.
>
> Number two, the use of unlawful force by [the victim] must have appeared to the defendant ready to take place.

> The use of force not likely to cause death or great bodily harm is not justifiable if you find that the defendant was attempting to commit, committing or escaping after the commission of an aggravated battery.

*Id.* at 1265.

The Florida Court of Appeal deemed this instruction erroneous, finding it "reasonably calculated to confuse or mislead the jury."  *Id.* (quoting *Barton Protective Servs., Inc. v. Faber*, 745 So. 2d 968, 974 (Fla. Dist. Ct. App. 1999)); *see also Wadman v. State*, 750 So. 2d 655, 658 (Fla. Dist. Ct. App. 1999) (noting that a trial court "should not give instructions which are confusing, contradictory, or misleading").  *Giles* held that the self-defense instruction was "misleading and confusing such that the effect was to negate Giles' only defense to the charge of aggravated battery."  *Id.* (citing *Davis v. State*, 804 So. 2d 400, 404 (Fla. Dist. Ct. App. 2001) (deeming it fundamental error to give an inaccurate and misleading instruction where the effect of that instruction is to negate a defendant's only defense); *Harris v. State*, 570 So. 2d 397, 399 (Fla. Dist. Ct. App. 1990) (instructing that the trial court should give a complete and accurate instruction so as not to negate the defendant's theory of self-defense)).

*Giles* noted that although aggravated battery is indeed a forcible felony, the Florida statute's plain language reflects that it applies "only under circumstances where the person claiming self-defense is engaged in another, independent 'forcible felony' at the time."  831 So. 2d at 1265 (citing *Perkins v. State*, 576 So.

11

2d 1310 (Fla. 1991) (holding that cocaine trafficking was not a forcible felony so as to preclude the defense of self-defense when the killing occurred during an attempt to traffic in cocaine)).  That is, "[t]he instruction is normally given in situations where the accused is charged with at least two criminal acts, the act for which the accused is claiming self-defense and a separate forcible felony."  *Id.* at 1265 (citations omitted).

Though Giles committed only one act, the instruction conveyed that the act that Giles sought to justify—the alleged aggravated battery—precluded a finding of justification.  "Essentially, the jury was instructed that [Section] 776.041(1) would apply to preclude a self-defense claim, when it is claimed that the acts with which the defendant is charged are themselves committed in appropriate self-defense."  *Id.* at 1266.  Therefore, even if the jury determined that Giles threw the brick in self-defense, his action was nonetheless unjustifiable because the act itself was a forcible felony.  This reading of the statute is erroneous, the court said.  Instead, "the proper test for determining the applicability of the instruction is not whether the self-defense act itself could qualify as a forcible felony, but whether, at the time of the self-defense, the accused was engaged in a separate forcible felonious act."  *Id.* at 1266 (citing *Perkins*, 576 So. 2d at 1311).  Therefore, the trial court's instruction was "circular and confusing to the jury such that it basically negated Giles' defense."  *Id.* (citations omitted).

### III.   *Giles'* progeny and application to *Strickland*

Conrad argued to the state court that he was denied effective assistance of counsel when his trial counsel failed to object to the forcible-felony instruction in light of *Giles*.  He maintains that because *Giles* predated his trial, his counsel should have known that the forcible-felony instruction did not apply and thus should have objected.

As stated above, counsel's performance is deficient when it falls below an objective standard of reasonableness and is "outside the wide range of professionally competent assistance."  *Johnson v. Sec'y, DOC*, 643 F.3d 907, 928 (11th Cir. 2011) (quotation omitted).  The "test has nothing to do with what the best lawyers would have done.  Nor is the test even what most good lawyers would have done.  We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial."  *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) (en banc) (quotation marks omitted).  Conrad must therefore establish that "no competent counsel would have taken the action that his counsel did take."  *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc).  Here, the required "objective inquiry," *Castillo v. Fla. Sec'y of DOC*, 722 F.3d 1281, 1285 n.2 (11th Cir. 2013), entails asking "whether any reasonable lawyer could have elected not to object for strategic or tactical reasons,"

13

not whether "the actual defense counsel was . . . subjectively motivated by those reasons." *Id.*

According to Conrad, the two charges for which he stood trial—second-degree murder and second-degree attempted murder—were not separate, independent felonies.  Instead, he portrays his shooting of Lefevre and Padilla as part of the same transaction, a unified attempt at self-defense.

Conrad acknowledges that he was charged with two felonies for which he claimed self-defense, while the *Giles* defendant confronted only one charge.  However, he characterizes this fact as "a distinction without a difference" because he claimed self-defense as to both charges, which were related to victims acting in concert in the same chain of events.  Conrad submits that the forcible-felony instruction was confusing and misleading, as he was not charged with any felony other than those to which self-defense provided a complete defense.

The State responds that Conrad's counsel should not have been expected to know that that the forcible-felony instruction did not apply, as the Florida Supreme Court did not amend its standard jury instructions to reflect the *Giles* principle until 2006, three years after Conrad's trial.  *See In re Std. Jury Instructions in Criminal Cases (No. 2005-4)*, 930 So. 2d 612, 614 (Fla. 2006) (mem.) (instructing courts to give the forcible-felony instruction "only if the defendant is charged with more than one forcible felony" pursuant to *Giles*).  Instead, during Conrad's 2003 trial,

14

Florida's jury instructions indicated that the forcible-felony instruction was proper where the defendant claiming self-defense was engaged in another independent forcible felony. The allegations against Conrad reflected exactly these circumstances, as Conrad was charged with two distinct felonies.

The State's reasoning is persuasive. The instruction was not erroneous according to Florida law at the time of the trial. We have observed that "[r]easonably effective representation cannot and does not include a requirement to make arguments based on predictions of how the law may develop." *Spaziano v. Singletary*, 36 F.3d 1028, 1039 (11th Cir. 1994) (alteration in original) (citations omitted); *see also Jackson v. Herring*, 42 F.3d 1350, 1359 (11th Cir. 1995) ("To be effective within the bounds set by *Strickland*, an attorney need not anticipate changes in the law.").

What is more, though *Giles* represents the genesis of the court's reasoning regarding the forcible-felony instruction, that case did not address the precise issue at hand here—that is, the application of the instruction when a defendant claims self-defense as to *more than one victim.* The Florida Court of Appeal confronted the issue only in *Shepard v. Crosby*, 916 So. 2d 861 (Fla. Dist. Ct. App. 2005)—

which was decided two years after Conrad's trial.  Whatever *Shepard*'s effect, counsel was not deficient in failing to raise the case.[1]

Florida precedent indicates that trial counsel's failure to object to standard jury instructions that had not been invalidated by the Florida Supreme Court do not render counsel's performance deficient.  Therefore, Conrad has not satisfied *Strickland*'s performance prong.  The district court did not err by dismissing Conrad's petition for habeas relief.

## CONCLUSION

Because Conrad was charged with more than one forcible felony, the magistrate judge and the district court determined that the forcible-felony instruction was not improper.  We agree.  Because the provision of the forcible-felony instruction at Conrad's trial comported with Florida law at the time of the trial, Conrad's trial counsel did not violate constitutional standards.  We therefore conclude that the district court's finding was not an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

AFFIRMED.

---

[1] *Shepard* provides scant background information and sheds little light on the issue before us. Florida courts have called *Shepard*'s precedential value into question.  *See, e.g.*, *Martinez v. State*, 933 So. 2d 1155, 1167 (Fla. Dist. Ct. App. 2006) ("As [this] extremely brief opinion[] reveal[s] very little, if anything, regarding the analysis performed or articulate[s] the facts upon which [it is] based, we conclude that [it] . . . [is] of no precedential value." (citing *Shepard*, 916 So. 2d 861)).  Accordingly, our analysis does not rely upon *Shepard*.

16