631 So.2d 1119 (1994)
SILVER SPRINGS MOOSE LODGE NO. 1199, etc., Appellant,
v.
Marion ORMAN and Karl Orman, Appellees.
Nos. 93-1390, 93-1985.
District Court of Appeal of Florida, Fifth District.
January 14, 1994.
Rehearing Denied February 16, 1994.
Matthew R. Danahy of Shofi, Smith, Hennen, Jenkins, Stanley & Gramovot, P.A., Tampa, for appellant.
Keith H. Lefevre and John Sanders of Jacobs & Goodman, P.A., Altamonte Springs, for appellees.
GOSHORN, Judge.
Silver Springs Moose Lodge No. 1199 (Moose Lodge) appeals the final judgment *1120 entered in favor of Marion and Karl Orman stemming from Marion Orman's slip and fall accident that occurred inside the Moose Lodge. The Moose Lodge argues that the trial court improperly submitted this case to the jury because the Ormans presented no evidence that the slippery condition existed for a sufficient period of time to place the Moose Lodge on constructive notice of its existence. We reverse.
Orman and her sister, Jean Hensley, regularly attended bingo games held at the Moose Lodge. Usually, they arrived at the bingo hall well before the starting time in order to purchase bingo packets, have a cup of coffee, visit with their friends, and set up their boards. However, because it was raining on this particular afternoon, they delayed their departure by approximately 15 minutes, and arrived between 5:25 and 5:30 P.M.
When they arrived at the "bingo entrance," Orman and Hensley noticed that rainwater coming from an overhang had caused a puddle to accumulate outside the building. Patrons had to step over the puddle to enter the bingo hall. Once inside, there were no signs or cones warning patrons that the floor was slippery or wet. No workers were mopping up any water or giving verbal warnings as to any danger. Also, there was no umbrella stand at the entrance, so bingo players carried their umbrellas with them across the hall to their seats.
Orman testified that she observed between 25 and 30 people already inside when she entered the hall. Hensley estimated the number to be between 35 and 40. Some were in the front of the hall purchasing admission tickets, while others were along the side in the nonsmoking area or back, playing cards and socializing.
Both Orman and Hensley testified that, as they walked into the hall, they did not notice any water on the floor inside the door. Orman and Hensley walked approximately 35 to 40 feet inside the bingo hall, made a right turn at the third or fourth row of tables and while rounding the next turn, Orman lost her footing and fell. Orman did not know how the liquid on which she fell got onto the floor, nor could she say how long it had been there before the fall. There were no smudges, streaks, tracks, or scuff marks which would indicate that it had been on the floor for a considerable amount of time.
The only other witness who testified as to the circumstances surrounding the liquid was Hensley. She stated that what she saw appeared to be "drops of water" and speculated that possibly they had dripped off of someone's umbrella or shoes. She did not see a puddle of water, nor did she see a trail from the entrance leading toward the spot where Orman fell. No evidence was presented as to the origin of the water drops or the length of time they were on the floor before Orman's accident occurred.
Moose Lodge made a motion for a directed verdict at the close of the plaintiff's case and again at the close of all the evidence. The trial court reserved ruling on these motions until the jury rendered its verdict. After the jury ruled in favor of the Ormans, Moose Lodge made a motion for judgment notwithstanding the verdict (JNOV). Thereafter, the court denied Moose Lodge's motions for directed verdict and JNOV. Moose Lodge appeals.
We agree with the Moose Lodge that the Ormans failed to present any evidence demonstrating that Moose Lodge had constructive notice[1] of the liquid on its floor prior to Orman's accident. The duty to learn of dangerous conditions in premises liability cases was set forth by this court in Winn-Dixie Stores, Inc. v. Marcotte, 553 So.2d 213 (Fla. 5th DCA 1989). In Marcotte, a customer sued a supermarket after she slipped and fell on a slippery substance on the supermarket's floor. The customer failed to produce any evidence that the supermarket's agents or employees caused the substance to be on the floor or that they had actual or constructive knowledge of its existence before the incident occurred. This court, in discussing the legal duty commonly referred to as "constructive notice," stated:
If a reasonable inspection would have revealed the dangerous condition in question, and if the dangerous condition existed prior *1121 to the injury a length of time in excess of the time between reasonably spaced inspections, then the trier of fact should find that the possessor neglected his duty and is liable for any injury legally caused by that neglect. On the other hand, if the injured invitee fails to prove these matters, and specifically fails to prove that the dangerous condition existed a length of time prior to the injury in excess of a reasonable period between inspections, the possessor should not be held liable for injury caused by that dangerous condition. In such a case, the length of time the dangerous condition existed prior to the injury is an indispensable factor in determining liability... .
Id. at 215 (footnote omitted). This court reversed the order denying the supermarket's motion for a directed verdict, noting that a landowner "is not an insurer of the safety of such persons, nor is the possessor strictly liable, or liable per se without fault, for injuries resulting to invitees from dangerous conditions on the premises... ." Id. at 214 (footnote omitted).
Here, the Ormans presented no evidence that Moose Lodge had either actual or constructive notice of the liquid's presence on the floor. No evidence was introduced as to how the substance got onto the floor or how long it had been there prior to Orman's fall. Further, there were no smudges, streaks, tracks or foot prints in or around the liquid evidencing it was there for a sufficient period of time for the Moose Lodge to be charged with constructive knowledge of a potentially dangerous condition. Thus, as in Marcotte, because there was no evidence of actual or constructive knowledge, the trial court should have granted the defendant's motion for a directed verdict. See also Wal-Mart Stores, Inc. v. King, 592 So.2d 705 (Fla. 5th DCA 1991), review denied, 602 So.2d 942 (Fla. 1992) (holding that without some evidence of the length of time the condition existed, liability cannot be determined and summary judgment is proper).
We recognize that in appropriate cases, constructive knowledge may be proven by circumstantial evidence. Newalk v. Florida Supermarkets, Inc., 610 So.2d 528, 529 (Fla. 3d DCA 1992); Teate v. Winn-Dixie Stores, Inc., 524 So.2d 1060, 1061 (Fla. 3d DCA 1988). In an attempt to apply this principle, the Ormans argue that the jury could infer that the water had come from a dripping umbrella used by one of the patrons. Based on that inference, the jury could further infer that because the hall opened at 4:30 P.M. and 30 or so patrons were already there when Orman arrived, the water that inferentially dripped from an umbrella could have been on the floor for one hour before Orman's fall. These multiple inferences would then enable the jury to conclude that the dangerous condition existed for a sufficient length of time before the accident to charge Moose Lodge with constructive notice thereof.
The Florida Supreme Court reviewed the use of this type of circumstantial evidence in a slip and fall case in Food Fair Stores, Inc. v. Trusell, 131 So.2d 730 (Fla. 1961). In Trusell, the plaintiff fell on a piece of lettuce in the defendant-supermarket's aisle. There was no evidence presented which established how the lettuce ended up on the floor. However, the defendant's employees were responsible for keeping grocery carts free of debris, and it was suggested that one of the employees could have negligently performed his duty, resulting in the lettuce being in the aisle. The court rejected the argument that this type of circumstantial evidence justified the jury making such an inference:
It is apparent that a jury could not reach a conclusion imposing liability on the petitioner without indulging in the prohibited mental gymnastics of constructing one inference upon another inference in a situation where, admittedly, the initial inference was not justified to the exclusion of all other reasonable inferences.
Id. at 733. See also Wilson v. Winn-Dixie Stores, Inc., 559 So.2d 263, 264 (Fla. 2d DCA), review denied, 574 So.2d 145 (Fla. 1990).
Similarly, the inferences and speculations proposed by the Ormans would require a juror to place "an inference on an inference" in order to reach the conclusion that the water was on the floor for approximately one hour. Such action would amount to an impermissible *1122 stacking of inferences and speculation.
The Ormans also cite Scott v. Florida Supermarkets, Inc., 580 So.2d 312 (Fla. 3rd DCA 1991) to support their assertion that the trial court's ruling was proper in the present case. In Scott, on a rainy day the plaintiff slipped and fell in a puddle near the front entrance of the defendant's supermarket. The lower court granted summary judgment in favor of the defendant. However, the appellate court reversed, finding that genuine issues of material fact existed as to whether the supermarket had constructive notice of the dangerous condition. The court reasoned that because evidence was presented showing the premises owner had a recurring problem of puddles forming at the entrance during rain storms, and the accident occurred on a rainy day, summary judgment was improper.
Scott is clearly distinguishable from the present case. There, the court based its holding on the fact that the plaintiff slipped and fell in the puddle at the front entrance where others had slipped and fallen. In the instant case, not only is there no evidence of other slip and fall instances at the Moose Lodge, but further, there was no evidence that the water Orman slipped upon was in any way connected to the puddle that formed outside the Moose Lodge entrance.
The same distinctions exist between the instant case and Brooks v. Phillip Watts Enterprise, Inc., 560 So.2d 339 (Fla. 1st DCA), review denied, 567 So.2d 435 (Fla. 1990). In Brooks, the plaintiff's slip and fall accident occurred on a rainy morning as he crossed the threshold of the defendant's supermarket. Although the trial court granted summary judgment in favor of the defendant, the appellate court reversed. The court emphasized that summary judgment was improper because the record contained evidence the store "had knowledge that water came in the front area of the store in rainy weather." Id. at 342. Again, in the case at bar, there is no evidence that Orman's accident was related to the puddle which formed at the Moose Lodge bingo entrance. In fact, both Orman and Hensley stated they did not observe any substance on the floor when they walked from the bingo entrance, down several aisles to the place where Orman fell.
Finally, the Ormans assert that the elevated standard of care imposed upon race track operators[2] should be extended to charity bingo events. To support their proposition, the Ormans compare the scene present at a race track with that of a bingo hall and assert they are similar:
[R]ace tracks typically confine spectators to certain areas, and bettors are preoccupied with carrying programs, pencils, and are continually peering up at computerized toteboards showing the latest odds, results and payoffs. Losing tickets are routinely scattered about the floor, and each bettor is racing the clock to study the next race program, fill out betting slips, and count his cash prior to lining up at the window.
At the bingo hall, players carry "bingo bags" containing pertinent materials for the event. They purchase admission tickets, assemble their game cards and concentrate during the game to increase their chances of being the first to call "Bingo!" should their card be a winner. We reject this argument.
Sub judice, no testimony was given to suggest the atmosphere resembled the hustle and bustle of the race track. On the contrary, when asked whether she and her sister were rushing to obtain their seats because of their late arrival, Hensley stated that they were in no hurry. Although Orman testified that she preferred to arrive at the bingo hall early to get organized for the evening's festivities, she also asserted that she liked to arrive early to "[g]et my little cup of coffee and enjoy myself." Clearly, the facts in the present case do not support applying the law set forth in the line of race track cases cited by the Ormans.
Because there is no evidence the Moose Lodge had actual knowledge of the dangerous condition prior to the injury, and no *1123 evidence was presented as to the length of time the dangerous condition existed prior to Orman's fall, the Moose Lodge is entitled to judgment as a matter of law. To hold otherwise would essentially make premises owners insurers of their business invitees' safety which is contrary to the law in Florida. See Marcotte; Haynes v. Lloyd, 533 So.2d 944 (Fla. 5th DCA 1988). Accordingly, we reverse the final judgment in favor of the Ormans and remand with directions to enter judgment in favor of the Moose Lodge.
REVERSED.
PETERSON, J., concurs.
GRIFFIN, J., dissents without opinion.
NOTES
[1] It is undisputed there was no actual notice of the dangerous condition.
[2] See Wells v. Palm Beach Kennel Club, 160 Fla. 502, 35 So.2d 720, 721 (1948) (stating that "reasonable care as applied to a race track requires a higher degree of diligence than it does when applied to a store, bank or such like place of business."); McCurry v. Investment Corp. of Palm Beach, 548 So.2d 689, 690 (Fla. 4th DCA 1989) (same).