801 So.2d 953 (2001)
Genevieve M. BARBOUR, Appellant/Cross-Appellee,
v.
BRINKER FLORIDA, INC., etc., Appellee/Cross-Appellant.
No. 5D00-2008.
District Court of Appeal of Florida, Fifth District.
October 12, 2001.
Rehearing Denied December 19, 2001.
*955 Joseph H. Williams of Troutman, Williams, Irvin, Green & Helms, P.A., Winter Park, for Appellant.
Sylvia H. Walbot, E. Kelly Bittick, Jr., Matthew J. Conigliaro of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., St. Petersburg, for Appellee.
PETERSON, J.
Genevieve Barbour appeals an adverse directed verdict and grant of a new trial after having received a favorable jury verdict in a negligence action. Barbour sustained *956 injuries when she slipped and fell in a restaurant bathroom formerly owned by Brinker Florida, Inc. (Brinker). Brinker cross-appeals the trial court's denial of its request for a special jury instruction and verdict form.
Barbour stepped on something that rolled out from under her feet and fell as she entered the restaurant bathroom shortly after 2:30 p.m. When she arose she noticed a roll of toilet paper with the roller mechanism inside the cardboard core lying on the floor. She also noticed a metal toilet paper dispenser that locked with a key, which was open about one and one-half inches and the roller was absent. She placed the roll on a counter in the bathroom in order to save another from a similar fate. She returned to her table, and when the restaurant manager learned of the event, he summoned an ambulance that transported her to a hospital. She was later found to have multiple bruises, shoulder and hip pain, and a sprained wrist.
Barbour argues that there was competent and substantial evidence to support the jury's verdict in her favor precluding the trial court from granting Brinker's motion for directed verdict.
"An entity in the actual possession and control of a premises, such as a [restaurant], to which members of the public are invited, is not an insurer of the safety of such persons, nor is the possessor strictly liable, or liable per se without fault, for injuries resulting to invitees from dangerous conditions on the premises." Winn-Dixie Stores, Inc. v. Marcotte, 553 So.2d 213, 214 (Fla. 5th DCA 1989). Nevertheless, a restaurant has two legal duties to protect invitees from the harmful effects of dangerous conditions. See id. First, the restaurant must ascertain that the premises are reasonably safe for invitees which includes the responsibility to use reasonable care to acquire actual knowledge of any dangerous conditions. See id. Second, the restaurant has an entirely different legal duty to use reasonable care to protect invitees from dangerous conditions of which the restaurant has actual knowledge. See id.
As to the first duty, if a restaurant could reasonably foresee that some invitees or third parties might enter the premises and create a dangerous condition, then the restaurant must use reasonable care to timely discover the existence of the dangerous condition. See id. This is commonly referred to as constructive notice. See id. This duty is breached when a restaurant fails to make a reasonably diligent search or inspection at reasonable intervals of time. See id. at 215.
If a reasonable inspection would have revealed the dangerous condition in question, and if the dangerous condition existed prior to the injury a length of time in excess of the time between reasonably spaced inspections, then the trier of fact should find that the possessor neglected his duty and is liable for any injury legally caused by that neglect. On the other hand, if the injured invitee fails to prove these matters, and specifically fails to prove that the dangerous condition existed a length of time prior to the injury in excess of a reasonable period between inspections, the possessor should not be held liable for injury caused by that dangerous condition. In such a case, the length of time the dangerous condition existed prior to the injury is an indispensable factor in determining liability.
Id. Constructive knowledge can be established by circumstantial evidence, by either showing that the condition existed for such a length of time that the defendant should have known of the condition or the *957 condition occurred with sufficient regularity as to put the defendant on notice. See Wal-Mart Stores, Inc. v. Reggie, 714 So.2d 601, 603 (Fla. 4th DCA 1998) (internal citations omitted); see also Silver Springs Moose Lodge No. 1199 v. Orman, 631 So.2d 1119, 1121 (Fla. 5th DCA 1994). Without some evidence of the length of time the dangerous condition existed, liability cannot be determined under a constructive notice theory. See Wal-Mart Stores, Inc. v. King, 592 So.2d 705, 707 (Fla. 5th DCA 1991).
On the other hand, actual knowledge of a dangerous condition exists when the restaurant's employees or one of its agents knows of or creates the dangerous condition. See Food Fair Stores, Inc. v. Trusell, 131 So.2d 730, 732 (Fla.1961); see also Everett v. Restaurant and Catering Corp., 738 So.2d 1015 (Fla. 2d DCA 1999). When the negligence which produces the injury is that of an employee of the defendant, then the matter of the employer's knowledge of the existence of the dangerous condition becomes inconsequential because the knowledge of the employee is chargeable against the employer and his negligent act committed in the course of his employment is binding upon the employer. See id. (internal citations omitted).
In the instant case, no direct evidence was introduced which showed that Brinker had actual knowledge of the toilet paper roll and roller mechanism being on the restroom floor. However, Barbour did introduce evidence, which if believed by the jury indicated that the toilet paper dispensers were under the exclusive control of Brinker. This evidence included photographs of the type of dispenser in use at the time of the accident. According to two witnesses, a key was needed to unlock the dispenser and Barbour stated that she found the dispenser open immediately after her fall. Further, Barbour testified that she picked up the toilet paper roll with the roller mechanism still inside the cardboard roller from the floor inside the restroom stall. Barbour also stated that the dispenser was missing one roll.
Additionally, the restaurant manager's testimony indicated that the dispenser locked, but did not require a key to unlock it, stating that "you couldn't get them [the dispensers] open unless you knew how." He stated that the cleaning staff and servers were responsible for filling the dispensers. Thus, the manager's testimony would support Barbour's theory of actual knowledge of the mechanical roller and toilet paper being on the floor or being placed in a position so that they could fall to the floor if only the servers, managers, and cleaning contractor were responsible for changing the toilet paper and knew how to open the dispenser. While the manager did state that the cleaning service sometimes left rolls of toilet paper out of the dispensers for the customers' use, this would not include the roller mechanism which would normally remain inside of the dispenser. Based on this evidence, a jury could have reasonably concluded without impermissibly stacking inferences that Brinker had actual knowledge of the dangerous condition, that is the presence of the roller and used roll of toilet paper on the restroom floor.
The jury, by its verdict, obviously disbelieved the manager when he indicated that he only found the roll of toilet paper and not the mechanism sitting on the counter where Barbour had placed it. Had the manager's version been accepted, no liability should have been assessed against Brinker because it is reasonable for an establishment to leave extra rolls of toilet paper out for customers' use. In every day experience, this is a common and expected occurrence. Furthermore, in *958 reaching its verdict the jury could have considered the manager's lack of credibility as evidenced by the fact that he failed to follow company policy and preserve the toilet paper roll and mechanism, failed to take pictures of the bathroom or the dispensers, could not remember who the server was who checked the restroom after Barbour's fall, could not remember and did not attempt to ascertain which server or servers were responsible for cleaning and checking the restroom throughout the day, and did not completely fill out the required incident report in which he stated that Barbour walked out of the restaurant, when in fact she was carried out on a backboard and stretcher. The photographs also supported Barbour's testimony as to the type of dispenser present in the restaurant at the time she fell. Finally, when asked who the server was who was working during the time of Barbour's fall, Brinker gave Barbour a list of fifty-seven employees when the manager testified that only six to eight were working and that Brinker's payroll records would show what time the employees arrived and departed from Grady's.
Barbour also presented evidence regarding Brinker's constructive knowledge of the presence of toilet paper roll and roller mechanism on the floor. The manager testified that the restaurant opened at 11:00 a.m. and that the restrooms were checked every thirty minutes. The manager further stated that the restrooms were thoroughly cleaned at the end of the lunch hour shift around 1:30 p.m. Barbour arrived at approximately 2:30 p.m. Barbour stated that no one else was in the restaurant except her and Stern, while the manager testified on one occasion that there were two or three other tables and then later testified that there were several other patrons in the restaurant. Both the manager and Barbour indicated that they saw no one else enter the restroom before Barbour. The manager stated that the cleaning service and the servers were responsible for filling the dispensers and that the dispensers could only be opened if you knew how. Barbour indicated that the dispensers locked with a key. The testimony of both permits the inference that an employee was responsible for the roller mechanism being on the floor, not a customer.
Barbour stated that she did not see what she slipped on but that it "rolled" out from under her foot. Then within minutes, Barbour found the toilet paper roll and roller mechanism on the floor inside the stall. Both she and the manager stated that they saw nothing else on the floor. The jury could have permissibly inferred that Barbour slipped on the roller mechanism covered by the used roll of toilet paper.
The manager also stated that if an employee found something on the bathroom floor, they were instructed to pick it up. If, as Brinker asserts, the restrooms were checked every thirty minutes, then the jury could infer that the restroom would have been checked at approximately 2:30 p.m. and the roller mechanism and toilet paper roll should not have been on the floor when Barbour entered the restroom sometime between 2:30 p.m. and 2:40 p.m. Based on the manager's and Barbour's testimony which indicated that they saw no one enter the restroom, the jury could have inferred that no one else entered the restroom before Barbour other than an employee during the inspection. The jury could have inferred that Brinker's employees failed to inspect the restroom at 2:30 p.m. or that an inspection was done and the employee failed to pick up the roller mechanism and toilet paper roll; and therefore, the toilet paper and roller mechanism were on the floor longer than the *959 time between reasonable spaced inspections. See Marcotte, 553 So.2d at 215.[1] Any one of these inferences would support the jury's verdict.
Furthermore, Barbour presented testimony as to the condition of the bathroom, condition of the dispenser, and the toilet paper roll and roller mechanism. But Barbour was precluded from presenting any additional evidence of the condition of the toilet paper roll, the roller mechanism, and the type of dispenser because Brinker failed to preserve them either physically or photographically as required by Brinker's procedures. Although the failure of a party to preserve evidence may give rise to a legal inference, Barbour did not request such an instruction based upon Brinker's destruction of the evidence. This, however, did not prevent the jury from inferring that the missing toilet paper roll, roller mechanism, and dispenser might have been unfavorable to Brinker.
Contrary to Brinker's argument, these various inferences do not amount to an impermissible stacking of inferences to find that there was constructive knowledge of the dangerous condition because the jury had ample, admitted evidence upon which to make inferences. See Trusell, 131 So.2d at 733; Johnson v. Dicks, 76 So.2d 657, 661 (Fla.1954).
Brinker further argues that the trial court erred when it failed to submit its special jury instructions and special verdict form to the jury. Trial courts are generally accorded broad discretion in formulating jury instructions. See Westerheide v. State, 767 So.2d 637, 656 (Fla. 5th DCA 2000), rev. granted, 786 So.2d 1192 (Fla.2001) (citing Reyka v. Halifax Hosp. Dist., 657 So.2d 967 (Fla. 5th DCA 1995)). The standard of review to be applied to a decision to give or withhold a jury instruction is an abuse of discretion. See id. (citing Barton Protective Servs., Inc. v. Faber, 745 So.2d 968 (Fla. 4th DCA 1999)). The trial court's decision to give a particular instruction will not be reversed "unless the error complained of resulted in a miscarriage of justice or the instruction was reasonably calculated to confuse or mislead the jury." Faber, 745 So.2d at 974 (citing Reyka, 657 So.2d at 967). Furthermore, if the jury instructions as a whole fairly state the applicable law, failure to give a particular instruction does not constitute error. See Westerheide, 767 So.2d at 656 (citing CSX Transp., Inc. v. Whittler, 584 So.2d 579 (Fla. 4th DCA 1991)).
In the instant case, Brinker requested four special jury instructions in addition to modifying many of the standard jury instructions. The modifications that Brinker requested to the standard instructions neither added to nor clarified the instructions. Accordingly, we find that the denial of the proposed changes to the standard instructions was not an abuse of discretion.
Brinker also alleges that the trial court erred when it failed to give Brinker's special verdict form to the jury. When a party requests a special verdict form and objects to the submission of a general verdict form to the jury, it is necessary for the appellate court to determine the sufficiency of the evidence to sustain all counts. See Colonial Stores, Inc. v. Scarbrough, 355 So.2d 1181, 1186 (Fla.1977). Because we find that the jury's verdict could be sustained on either an actual notice theory or a constructive notice theory, we deem it unnecessary to determine whether a special verdict form was required.
*960 We vacate the order directing a verdict in favor of Brinker, vacate the grant of a new trial, and remand with instructions to reinstate the jury verdict.
SHARP, W., and SAWAYA, JJ., concur.
NOTES
[1] But see Wal-Mart, 592 So.2d at 707 (internal citations omitted) (the fact there was no inspection for a given length of time in itself provides no proof that the defect was actually there for a sufficient period to place a premise owner on reasonable notice of its existence).