864 So.2d 64 (2003)
MORTON ROOFING, INC., and Alvin A. Morgan, Appellants,
v.
Jody D. PRATHER and David B. Prather, Appellees.
No. 5D02-2570.
District Court of Appeal of Florida, Fifth District.
December 19, 2003.
Rehearing Denied January 26, 2004.
*65 Robert E. Biasotti and Cristina Alonso of Carlton Fields, P.A., St. Petersburg, for Appellants.
D. Culver Smith, III of D. Culver Smith, III, P.A., West Palm Beach, for Appellees.
PLEUS, J.
The defendants, Morton Roofing, Inc., etc., appeal a final judgment entered in favor of the plaintiff, Jody Prather, following a jury trial on her claim for personal injuries arising from an auto accident.
Following initial jury deliberations, the jury returned a verdict awarding Prather $43,177.65 in past medical expenses, $430,526 for future medical expenses, zero damages for past loss of wages, $963,590 for loss of earning capacity, zero damages for past non-economic (pain and suffering) damages and $250,000 for future non-economic (pain and suffering) damages, for a total of $1,687,293.65 in damages.[1]
Before the jury was discharged, Prather objected to the verdict, asserting it was inconsistent. She contended that the jury was required to enter some amount for past pain and suffering since it awarded damages for future pain and suffering. The defendants agreed that the awards for non-economic damages were inconsistent and needed to be reconsidered.[2] The trial court sent the jury back to reconsider and instructed the jury as follows:
There is an inconsistency in your verdict. You found that there was damages for future pain and suffering and disability, etcetera; but you didn't find any in the past. To find that she'll have it in the future but have none in the past is inconsistent, so I'm going to send you back in with the verdict and have you consider that a little more. And if you can reach a determination of any past pain and suffering, disability, etcetera, *66 write that figure in and correct the totals, and then we'll be finished.
The jury inquired whether it had to keep future non-economic damages the same. The trial judge told them to reconsider the inconsistency of $250,000 for future and nothing in the past. The trial judge stated, "I don't think they can change the future at this point." The defendants objected to the instruction that the jury could not reconsider its answer to future non-economic damages.
The jury modified the award for past pain and suffering by drawing a line through the zero and writing in $25,000. The verdict form reflects that at some point the $250,000 award for future pain and suffering had been struck through and the figure $225,000 inserted, but it was then returned to $250,000.
The parties initially disagree as to the standard of review applicable to a trial court's decision on how a jury is to reconsider an inconsistent verdict. The defendants assert that the trial court's ruling is a pure question of law subject to de novo review.
Prather counters that abuse of discretion is the proper standard. She maintains that this issue is one involving supervision over the course of the trial and analogizes the issue of resubmission of the verdict to correct a legal error to the consideration by the trial court of a motion for new trial. See Allstate Ins. Co. v. Manasse, 707 So.2d 1110 (Fla.1998); Cloud v. Fallis, 110 So.2d 669 (Fla.1959). She argues that the trial court had a superior vantage point to judge the validity of the verdict in the context of the claims asserted and evidence presented. She further points out that under section 768.74(6), Florida Statutes, the legislature has vested in the trial court the discretionary authority to review damage awards in light of excessiveness or inadequacy. After careful consideration, we conclude that our review of this issue is de novo.
The parties conceded below that the verdict for non-economic damages was legally inconsistent and needed to be reconsidered. This concession implicates the general principle set out in Stevens Markets, Inc. v. Markantonatos, 189 So.2d 624 (Fla.1966). Until a verdict in a civil action is accepted by the trial court, the entire case remains in the hands of the jury. The Stevens Markets court quoted the following passage from Tobin v. Garry, 127 So.2d 698, 700 (Fla. 2d DCA 1961):
The validity of a verdict is a question for the Court and until it is received and recorded by the Court, it is still within the control of the jurors. See Nelson v. McMillan, 151 Fla. 847, 10 So.2d 565. It is clearly the right and duty of the Court before discharging the jurors to call their attention to a defective verdict and give them an opportunity to return a proper verdict. Rentz v. Live Oak Bank, 61 Fla. 403, 55 So. 856. When they are sent back to further [sic] or reconsider the matter, the case is still in their hands. They are not bound by their former action. They are at liberty to review the case and to bring in an entirely new verdict.
189 So.2d at 626.
Stevens Markets involved an action for damages for false imprisonment, unlawful detention, unauthorized search and battery arising out of the detention and search of the minor plaintiff on suspicion of shoplifting. The jury verdicts as initially returned were for zero compensatory damages and $5,000 punitive damages for the minor plaintiff and $1,500 compensatory damages for the plaintiff's father. The trial court announced that the jury had obviously misunderstood the instructions and directed the jury to reconsider the compensatory *67 award to the minor plaintiff without further considering the punitive damages awarded to her or the compensatory award to her father. The supreme court reversed the district court of appeal's affirmance of this ruling, finding it was legal error.
Stevens Markets reflects that under Florida law, where a defective verdict is returned and the defect discovered before the jury is discharged, resubmission by the court is a legal duty, not simply a discretionary call.
This is true irrespective of whether Prather is correct that the 1986 Tort Reform Act, which requires itemized damage verdicts in personal injury actions,[3] modifies Stevens Markets in a personal injury context. If resubmission of less than the entire verdict is thereby authorized, it is because of a statutory modification in the law, not because the trial court can make a judgment call based on the circumstances of the particular case before it.
As to the merits of resubmitting less than the entire verdict for reconsideration, Prather asserts that Stevens Markets involved general verdicts and an inconsistency that arose because an award of one element of damage (compensatory) was a legal prerequisite to the award of the other element of damage (punitives). However, the decision is not limited to its facts. Rather, we read Stevens Markets as standing for the proposition that where a legally defective verdict is returned, the trial court has a duty to instruct the jury to return a proper verdict and the cause is returned to the jury which is then at liberty to bring in an entirely new verdict. The parties in this case agreed that the verdict was legally flawed and with the concurrence of both parties, it was rejected by the court and the cause returned to the hands of the jury. Whether the jury was free to return an entirely new verdict or was properly limited to reconsideration of only its decision to award zero past noneconomic damages depends on whether the rule in Stevens Markets has been legislatively modified in personal injury actions where itemized damage verdicts are employed.
While Prather asserts that logic dictates the 1986 Tort Reform Act mandating use of itemized verdict forms permits partial reconsideration by the jury of a damage award in a personal injury context, the defendants point out that Stevens Markets has repeatedly been cited in personal injury cases since 1986 for the proposition that when a trial court resubmits a defective verdict to the jury, the entire cause remains in the hands of the jury and the jurors are not bound by their former action. See Streacker v. Hinton, 742 So.2d 426 (Fla. 1st DCA 1999); Berg v. Sturgeon, 718 So.2d 887 (Fla. 4th DCA 1998); Hollywood Corporate Circle v. Amato, 604 So.2d 888 (Fla. 4th DCA 1992); Gen. Contractors of Am. v. Stinson, 524 So.2d 1148 (Fla. 3d DCA 1988).
Prather counters by citing decisions such as Auto-Owners Insurance Co. v. Tompkins, 651 So.2d 89 (Fla.1995), wherein the trial court had erroneously instructed the jury that it could award future economic damages only if it found permanent injury. The supreme court held that permanent injury is not a prerequisite to an award for future economic loss and remanded the case for a new trial on the issue of future economic damages but not on past economic damages which the jury had awarded. See also Dyes v. Spick, 606 So.2d 700 (Fla. 1st DCA 1992) which held that a verdict awarding past non-economic damages was contrary to the manifest *68 weight of the evidence. The appellate court remanded for a new trial on that issue alone and not on the future noneconomic damage issue. Prather also cites Edward M. Chadbourne, Inc. v. Van Dyke, 590 So.2d 1023, 1025 (Fla. 1st DCA 1991), which rejected the contention that once the trial court deemed an award of past economic damages defective, it was obligated to grant a new trial on all the elements of damages.
These cases cited by Prather, as well as other decisions, such as ITT Hartford Insurance Co. v. Owens, 816 So.2d 572 (Fla. 2002), are distinguishable from the situation presented here because they involved errors in jury verdicts, which had been accepted by the trial court and the jury discharged. The instant case involves a verdict which had not achieved finality when the trial court sought to limit the jury's reconsideration. While errors in verdicts which have achieved finality, may, in appropriate cases, be corrected by a trial or appellate court without the need to reject the legally-sound aspects of the verdict, a verdict which has not become final is subject to reconsideration in its entirety by the jury. The trial court erroneously resubmitted the cause to the jury solely on the portion of the verdict it deemed to be inconsistent.
Prather asserts that no prejudice resulted from this limited resubmission, or that any harm, at most, amounted to $25,000. The contention that any harm is entirely speculative, and thus not prejudicial error, is without merit. Such an assertion would preclude relief in nearly every case of an erroneous limited resubmission, since without violating the sanctity of the jury room, it can rarely be determined what the jury would have done had a proper resubmission been ordered.
We likewise decline Prather's invitation to quantify the prejudice at $25,000. This argument is predicated on a review of the verdict form which indicates that, at some point, the $250,000 award for future pain and suffering had been struck through, and reduced to $225,000, but was eventually returned to the $250,000 figure. It would be pure conjecture that the jury's intent was to award a total of $250,000 for pain and suffering, but its intent was thwarted by the trial court's erroneous ruling. It is not clear that the jury actually settled on $225,000, or whether that figure was inserted as part of the continuing deliberations. We refuse to speculate as to the jury's intent. What is clear is that the trial court erroneously limited the jury's reconsideration of its verdict.
The defendants additionally argue that the trial court committed reversible error by instructing the jury on concurring cause. The defendants point out that in this case, there were two separate automobile accidents, separated by two weeks and completely unrelated, other than by the fact that Prather was involved in each accident.
Trial courts are generally accorded broad discretion in formulating jury instructions and a trial court's decision to grant or withhold a jury instruction is reviewed for abuse of discretion. Barbour v. Brinker Fla., Inc., 801 So.2d 953 (Fla. 5th DCA 2001). The trial court's decision to give a particular instruction will not be reversed "unless the error complained of resulted in a miscarriage of justice or the instruction was reasonably calculated to confuse or mislead the jury." Barbour, 801 So.2d at 959 (quoting Barton Protective Ser., Inc. v. Faber, 745 So.2d 968, 974 (Fla. 4th DCA 1999)).
Florida Standard Civil Jury Instruction 5.1(b) on concurring causes provides:
In order to be regarded as a legal cause of [loss] [injury] [or] [damage], *69 negligence need not be the only cause. Negligence may be a legal cause of [loss] [injury] [or] [damage] even though it operates in combination with the [act of another] [some natural cause] [or] some other cause if such other cause occurs at the same time as the negligence and if the negligence contributes substantially to producing such [loss] [injury] [or] [damage].
The instruction on concurring causes sought by the Prathers and read to the jury, stated:
In order to be regarded as the legal cause of loss, injury, or damage, negligence need not be the only cause. Negligence may be a legal cause of loss, injury, or damage, even though it operates in combination with the act of another if the negligence contributes substantially to producing such loss, injury, or damage. Concurring causes may be two separate and distinct causes that operate contemporaneously to produce a single injury.
(Emphasis added).
The defendants maintain that: (1) no instruction on concurring cause should have been given, that such an instruction is warranted only when "two [or more] separate and distinct causes ... operate contemporaneously to produce a single injury," Goldschmidt v. Holman, 571 So.2d 422, 424 (Fla.1990) (emphasis added), and (2) alternatively, the instruction as modified was erroneous and misled the jury.
The defendants rely for reversal on Parker v. Hoppock, 695 So.2d 424 (Fla. 4th DCA 1997). In that case, the trial court's refusal to give a concurring cause instruction was sustained despite the fact that the plaintiffs' claims arose from two interrelated accidents. In the first accident, the defendant Hoppock lost control of his vehicle and struck another vehicle. The plaintiffs, Ralph and Ricky Parker, ran toward the accident scene to render assistance and were seriously injured when a vehicle driven by another defendant, Hart, collided with the disabled vehicles, striking the plaintiffs in the process. The appellate court explained there was no evidence that Hoppock's actions operated contemporaneously with the actions of Hart.
The instant case is entirely distinguishable in that, unlike the Parkers' situation, there was evidence here that Prather did, in fact, sustain injuries attributable to the first accident which were medically relevant to injuries she suffered in the second collision. Prather points out that "concurring" does not necessarily equate to "simultaneous" negligent acts and refers to the following discussion in Hart v. Stern, 824 So.2d 927, 930-31 (Fla. 5th DCA 2002):
Florida courts generally define concurring causes as "two separate and distinct causes that operate contemporaneously to produce a single injury." Goldschmidt v. Holman, 571 So.2d 422, 424 (Fla.1990) (citation omitted). "Although the term `concurring' suggests that such causes of damage must occur `simultaneously,' it has been held that temporally preceding conditions can conjoin with a defendant's subsequent alleged negligence." Zigman v. Cline, 664 So.2d 968, 970 (Fla. 4th DCA), review denied, 661 So.2d 823 (Fla. 1995)....
If a defendant's negligence operates in combination with the negligent act of another or a natural cause such as the plaintiff's pre-existing physical condition to cause an injury, the concurrent causation instruction should be given. Specifically, in medical malpractice cases, concurrent causes occur when the injury is caused by the negligence of a health care provider acting upon and combined with the plaintiff's pre-existing condition.

*70 The primary purpose of the concurring cause instruction is to "negate[ ] the idea that a defendant is excused from the consequences of his negligence by reason of some other cause concurring in time and contributing to the same damage." Fla. Std. Jury Instr. (Civ.) 5.1(b) note on use; Zigman, 664 So.2d at 969; see also Hernandez v. State Farm Fire & Cas. Co., 700 So.2d 451, 453 (Fla. 4th DCA 1997) ("The purpose of the concurring cause instruction is to inform the jury that the defendant is not excused from the consequences of his negligence by reason of some other cause concurring in time and contributing to the same damage.") (citation omitted).
(Footnote omitted).
The Stern court cited the decision in Thomason v. Gordon, 782 So.2d 896 (Fla. 5th DCA 2001), wherein this court ordered a new trial finding the trial court erred in failing to give a concurring cause instruction. Thomason involved an automobile negligence action wherein the plaintiff had (as here) sought instructions on both aggravation of a pre-existing injury and concurring cause based on the premise that there was evidence she had a pre-existing condition. The plaintiff argued that her pre-existing condition should be considered a concurrent cause with a defendant's negligence. This court agreed that both the concurring cause and pre-existing condition instruction should have been given:
Several courts have recognized that where a defendant's negligence acts in combination with a plaintiff's physical condition to produce an injury, the concurring cause instruction 5.1(b) is mandated. Esancy v. Hodges, 727 So.2d 308 (Fla. 2d DCA 1999) (trial court erred in failing to instruct the jury on concurrent cause where the evidence revealed that the negligent operation of the defendant's motor vehicle combined with Ms. Esancy's pre-existing back condition to cause her injury). The standard jury instruction on aggravation of a pre-existing injury or defect is a damage instruction. Gross v. Lyons, 721 So.2d 304 (Fla. 4th DCA 1998), review granted, 732 So.2d 326 (Fla.1999), and decision approved, 763 So.2d 276 (Fla.2000). That is, once a jury determines that the defendant's negligence caused in full or in part the plaintiff's injury, instruction 6.2(b) would permit the jury to assess damages against the negligent defendant for only that portion of the injury resulting from the aggravation or acceleration of the pre-existing condition or the activation of a latent condition. It has repeatedly been held that to avoid any confusion concerning the jury's ability to hold a defendant liable where two or more causes join to produce an injury, a trial court should read the instruction on concurrent cause, in addition to the damage instruction on aggravation. See Esancy, supra; Dutcher v. Allstate Ins. Co., 655 So.2d 1217 (Fla. 4th DCA 1995); Marinelli v. Grace, 608 So.2d 833, 834 (Fla. 4th DCA 1992), review denied, 620 So.2d 761 (Fla.1993).
782 So.2d at 898-99.[4]
Thomason supports the giving of a concurring cause instruction in this case. The defendants disputed at trial whether the second accident contributed to Prather's more serious injuries. However, there was medical evidence that the defendants' *71 negligence combined with Prather's physical condition resulting from the earlier accident to cause her injury, i.e., that the two accidents joined to produce her injury. Dr. Cwikla's expert testimony was that Prather's disc injury resulted from a combination of the two accidents.
The instruction as read comports with Thomason and Esancy which authorize an instruction on concurring cause where the defendant's negligence acts in concert with a pre-existing medical condition of the plaintiff to cause an injury. The defendants erroneously focus on the fact that the two automobile accidents did not occur at the same time, rather than that their negligence combined with the victim's pre-existing physical condition, caused by the earlier accident, to produce the injury.
Because the directed verdict on the defendants' liability for the accident was not challenged, and because of the uncertainty of knowing what the jury actually had in mind, we believe that justice is best served by a new trial on the issues of causation and damages. Accordingly, we reverse and remand for a new trial on the issues of causation and damages.
AFFIRMED IN PART, REVERSED and REMANDED IN PART.
PETERSON, J., concurs.
ORFINGER, J., concurs specially, with opinion.
ORFINGER, J., concurring specially.
I concur entirely with the court's opinion. I write separately to point out that while the verdict initially delivered by the jury may have been against the manifest weight of the evidence or was otherwise inadequate, I do not believe that the verdict was inconsistent as a matter of law, requiring further consideration by the jury.
As the court's opinion observes, Ms. Prather was awarded over $43,000 for past medical expenses, $250,000 for future noneconomic (pain and suffering) damages, but nothing for past pain and suffering. Given the severity of Ms. Prather's injuries, on its face, it seems illogical to conclude that her past medical expenses could be so high, without enduring any associated pain and suffering, or that she would suffer so significantly in the future but had not so suffered in the past. But that factual resolution by the jury does not create a legally inconsistent verdict.
"A verdict is clothed with a presumption of regularity and is not to be disturbed if supported by the evidence." Sweet Paper Sales Corp. v. Feldman, 603 So.2d 109, 110 (Fla. 3d DCA 1992) (citing Gould v. Nat'l Bank of Fla., 421 So.2d 798, 802 (Fla. 3d DCA 1982)). The fourth district court has defined an inconsistent verdict as follows:
Where the findings of a jury's verdict in two or more respects are findings with respect to a definite fact material to the judgment such that both cannot be true and therefore stand at the same time, they are in fatal conflict. In such circumstances, contradictory findings mutually destroy each other and result in no valid verdict, and a trial court's judgment based thereupon is erroneous.
Crawford v. Dimicco, 216 So.2d 769, 771 (Fla. 4th DCA 1968).
Giving clear meaning to the term "verdict against the manifest weight of the evidence" has been even more problematic. As the court explained in Ford v. Robinson, 403 So.2d 1379, 1382-83 (Fla. 4th DCA 1981):
The power of the trial judge to order a new trial derives, in other words, from the equitable concept that neither a wronged litigant nor society itself can afford to be without some means to remedy a palpable miscarriage of justice. *72 Unfortunately, the high moral appeal of this sentiment is directly proportional to the difficulty which the courts have encountered in attempting to express it as an objective standard.
* * *
[T]he trial judge who must decide whether to grant a new trial on the proffered ground that the jury verdict was "contrary to the manifest weight of the evidence" faces a far more difficult task. The phrase itself is not easy to define. In Cloud v. Fallis, [110 So.2d 669 (Fla.1959)], the Supreme Court gave the phrase its modern meaning when it resolved two conflicting lines in its prior decisional law by announcing a preference for the "broad discretion rule" over the "substantial competent evidence rule." Briefly stated, under the "broad discretion rule" a trial judge may grant a new trial "when the verdict is contrary to the `manifest weight and probative force of the evidence and (the) justice of the cause'" requires it. 110 So.2d 671. This rule affords the trial judge a much broader discretion than that afforded by the conflicting "substantial competent evidence rule," under which the judge was required to uphold any jury verdict supported by "substantial competent evidence and (in) the absence of any showing the jury had been deceived about the force and credibility of the evidence or influenced by outside considerations." Id.

* * *
It appears that the grant of authority to a trial judge to order a new trial when he concludes that a verdict is contrary to the manifest weight of the evidence, simply constitutes a judicial policy decision that some check on the jury's authority is necessary in cases where the evidence is not so one-sided as to merit a directed verdict, but yet is sufficiently one-sided to make it appear that a finding contrary to that evidence would constitute a miscarriage of justice, although there may not be identifiable error in the record to explain the jury's verdict. The test to be applied by a trial judge is admittedly to some degree subjective. Judges may differ in their views of "manifest weight of the evidence" in a given case. However, because the trial judge is on the spot and has some ability to measure not only the tangible evidence but also the intangible, such as the credibility of witnesses, his decision is given great deference. The only real counter-check on the abuse of a trial court's discretion is the existence of the corollary rule that the authority be exercised only in those rare instances where it is clear that the jury has gone astray.
(footnote omitted).
Here, the verdict may well have been against the manifest weight of the evidence, but it was not inconsistent as a matter of law. As such, I do not believe the jury should have been directed to consider the verdict further.[5] Given the immediacy of the problem caused by the requirement that an inconsistent verdict be reconsidered before the jury is discharged, it is understandable that the parties and the trial judge confused the similar, but distinct, problems presented by a verdict that is against the manifest weight of the evidence or is otherwise inadequate as opposed to a verdict that is legally inconsistent.
*73 If this court was reviewing an order granting a new trial on the grounds that the verdict was contrary to the manifest weight of the evidence or was inadequate, I would have no difficulty in affirming it. But, because I believe that the trial court, at the request of counsel for both parties, erroneously concluded that this verdict was legally inconsistent, a new trial is required on the issue of causation and damages.
NOTES
[1] The trial court directed a verdict on the defendant's negligence and the lack of comparative negligence. This ruling is not challenged on appeal.
[2] It is unclear whether the verdict was deemed inconsistent with the evidence or inconsistent because of no award for past pain and suffering, yet $250,000 for future pain and suffering. Regardless, both agreed it was "inconsistent."
[3] See § 768.77, Fla. State.
[4] Judge Harris dissented in Thomason asserting, inter alia, that the trial court properly declined to give the concurring cause instruction where the defendant's negligence acts in conjunction with the plaintiff's pre-existing condition. However, even Judge Harris observed that the instruction is appropriate "when there are consecutive accidents leading to an injury which cannot be apportioned...." 782 So.2d at 900.
[5] A jury verdict is contrary to the manifest weight of the evidence only when the evidence is "clear, obvious, and indisputable." Perenic v. Castelli, 353 So.2d 1190, 1192 (Fla. 4th DCA 1977).