[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 20-11070
Non-Argument Calendar
_____

D.C. Docket No. 2:19-cv-14112-RLR

WENDY DONNELLY,

Plaintiff-Appellant,

versus

WAL-MART STORES EAST, LP,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(February 3, 2021)

Before BRANCH, LAGOA, and BRASHER, Circuit Judges.

PER CURIAM:

A customer at a Florida Wal-Mart store spilled clear liquid on the store's

floor. Just over one minute later, another customer, Wendy Donnelly, slipped on

the puddle, fell, and was injured. Donnelly then sued Wal-Mart for negligence, alleging that Wal-Mart failed to exercise reasonable care in maintaining its premises. The district court granted summary judgment to Wal-Mart because Donnelly failed to point to any facts that could lead a reasonable jury to conclude that Wal-Mart had actual or constructive knowledge of the spill. Because we agree that Wal-Mart did not have the requisite knowledge of the spill required under Florida law, we affirm the district court's decision.

## I.    Background

Donnelly's fall and the surrounding events were captured on the store's security camera. The surveillance video shows a customer with a container inside her shopping cart, potentially a water bottle, pushing the cart down an aisle. The customer then quickly turns her cart into the chip and bottled water aisle, and the container tips over. The customer continues pushing her cart down the aisle and parks her cart near the far end of the chip and bottled water aisle. After approximately three minutes, the customer appears to notice liquid accumulating under her parked shopping cart and hunches over the spill. While the customer's cart is parked over the accumulating liquid, the video shows a presumed Wal-Mart employee walking past the chip and bottled water aisle at the opposite end of the

2

aisle from the customer and the spill.[1]  After hunching over the spill, the customer leaves the chip and bottled water aisle.

One minute and seven seconds later, Donnelly enters the chip and bottled water aisle, slips on the spill, and falls.  Donnelly testified that she did not see the clear liquid on the floor before she slipped.  She said "it wasn't large enough to see," and she had issues seeing it on the floor even after she slipped.  Donnelly testified that after her fall she saw an employee wipe up a "clear substance" from the floor.  She testified that there were no cart marks or footprints in the liquid, and the paper towel used to clean up the spill after her fall was wet but not dirty.  Donnelly did not know of anyone else aware of the substance on the floor before the incident.  The store's assistant manager, Jason Skovran, testified that he remembers seeing on the surveillance video that a Wal-Mart employee, while cleaning up the spill, had taken a paper towel with her foot and dragged it up the aisle, so he assumed, but did not know personally, that the spill extended up the aisle.

Donnelly sued Wal-Mart in a Florida state court for negligence, alleging that Wal-Mart violated the duty it owed Donnelly to use reasonable care in maintaining its premises.  Donnelly asserted that she was injured "when she slipped and fell

---

[1]  This employee was never identified, and the record does not reflect if the employee was on duty.

due to a foreign slippery substance on the floor inside the Defendant's store."

Donnelly claimed that Wal-Mart had actual or constructive knowledge of the

dangerous condition. Wal-Mart filed its answer and removed the case to federal

court. The district court set the deadline to amend pleadings for June 15, 2019.

During discovery, Donnelly retained an engineering expert that performed

slip resistance testing on Wal-Mart's vinyl tile floor and opined that it did not meet

acceptable standards for slip resistance safety when wet. Wal-Mart retained its

own expert that opined that the floor was not unreasonably dangerous when wet.

On August 27, 2019, seventy-four days after the pleading amendment

deadline, Donnelly moved for leave to amend her complaint to add that Wal-Mart

was also negligent by "failing to install, maintain, and provide safe flooring

surfaces on its premises" and that Wal-Mart "ha[d] actual or constructive notice

that its flooring becomes slippery, and therefore unreasonably dangerous, when

wet." Wal-Mart opposed Donnelly's motion for leave to amend, arguing the

amendments were futile because the claim Donnelly sought to add was not

supported by Florida law, circumvented the knowledge requirement set out in Fla.

Stat. § 768.0755,[2] and improperly sought to make Wal-Mart strictly liable for

_____

[2] In full, Fla. Stat. Ann. § 768.0755 provides:

(1) If a person slips and falls on a transitory foreign substance in a business
establishment, the injured person must prove that the business establishment had
actual or constructive knowledge of the dangerous condition and should have

customers' injuries.  Donnelly responded that Fla. Stat. § 768.0755 specifically preserved a right to sue for common law negligence, and her amended claim was not futile because Wal-Mart "breach[ed] . . . its common law duty in failing to use reasonable care in maintaining the premises in a reasonably safe condition—by failing to install, maintain, and provide safe flooring."  The district court denied Donnelly's motion in a paperless order, noting that "[t]he amended pleadings deadline passed on June 15, 2019."

Wal-Mart moved for summary judgment, arguing that Donnelly could not meet her burden to show that Wal-Mart had actual or constructive knowledge of the spill.  The district court granted Wal-Mart's motion after carefully viewing the video evidence.  It found that Donnelly's negligence claim failed because Wal-Mart did not have the required actual or constructive knowledge of the spill before Donnelly slipped and fell.  Donnelly appealed.

---

taken action to remedy it. Constructive knowledge may be proven by circumstantial evidence showing that:

> (a) The dangerous condition existed for such a length of time that, in the exercise of ordinary care, the business establishment should have known of the condition; or
>
> (b) The condition occurred with regularity and was therefore foreseeable.

(2) This section does not affect any common-law duty of care owed by a person or entity in possession or control of a business premises.

## II.    Discussion

Donnelly asserts two main arguments on appeal.[3]  First, she argues the district court erred in finding that Wal-Mart did not have actual or constructive knowledge of the spill.  Second, she argues that the district court erred in denying her motion for leave to amend her complaint to assert a separate negligence claim based on a theory of unsafe flooring.  We address each argument in turn.

### A.    Premises Liability Under Fla. Stat. § 768.0755

We review the district court's grant of summary judgment to Wal-Mart *de novo*, viewing all the evidence and drawing all reasonable factual inferences in favor of Donnelly, the nonmoving party.  *Campbell v. Johnson*, 586 F.3d 835, 840 (11th Cir. 2009).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

---

[3]  Donnelly also argues that Wal-Mart had constructive knowledge of the dangerous condition because prior slip and falls in the store for the preceding three years demonstrated that the condition occurred with regularity and was therefore foreseeable under Fla. Stat. § 768.0755(1)(b).  We agree with Wal-Mart that Donnelly waived this argument by failing to present it in the district court.  While Donnelly mentioned the prior slip and falls in her response to Wal-Mart's motion for summary judgment, she did so only in the context of her contention that Wal-Mart was negligent with regard to its flooring.  Donnelly never advanced the argument she now makes—that the prior slip and fall instances demonstrated Wal-Mart's constructive knowledge of the spill because spills occurred with regularity and were therefore foreseeable under Fla. Stat. § 768.0755(1)(b).  Because Donnelly raises this issue for the first time on appeal, we conclude that she has forfeited this argument, and we will not address it.  *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1335 (11th Cir. 2004) ("We will not address a claim that has been abandoned on appeal or one that is being raised for the first time on appeal, without any special conditions.").

To prove a negligence claim, Florida law requires plaintiffs to show "(1) a duty by defendant to conform to a certain standard of conduct; (2) a breach by defendant of that duty; (3) a causal connection between the breach and injury to plaintiff; and (4) loss or damage to plaintiff."[4] *Encarnacion v. Lifemark Hosps. of Fla.*, 211 So. 3d 275, 277–78 (Fla. 3d Dist. Ct. App. 2017) (quotation omitted). It is undisputed that Donnelly was a business invitee in Wal-Mart's store, so it owed her "a duty to exercise reasonable care to maintain [its] premises in a safe condition." *Id.*. But Wal-Mart "is not an insurer of the safety" of its customers, and it is not "strictly liable . . . for injuries resulting to invitees from dangerous conditions on [its] premises." *Winn–Dixie Stores, Inc. v. Marcotte*, 553 So. 2d 213, 214 (Fla. 5th Dist. Ct. App. 1989).

Where a business invitee slips and falls on a "transitory foreign substance," proof of the breach element of the plaintiff's negligence claim is "statutorily constrained" by Fla. Stat. 768.0755. *Encarnacion*, 211 So. 3d at 278. The statute requires the plaintiff to "prove that the business establishment had actual or constructive knowledge of the dangerous condition and should have taken action to remedy it." Fla. Stat. § 768.0755(1). Actual knowledge of a dangerous condition exists when a business establishment's employees or agents knew of or created the

---

[4] Because we are sitting in diversity and Donnelly's negligence claim arises under Florida law, we apply Florida's substantive law. *Pendergast v. Sprint Nextel Corp.*, 592 F.3d 1119, 1132–33 (11th Cir. 2010).

dangerous condition.  *Barbour v. Brinker Fla., Inc.*, 801 So. 2d 953, 957 (Fla. 5th Dist. Ct. App. 2001).  Constructive knowledge of a dangerous condition "may be proven by circumstantial evidence showing that: (a) The dangerous condition existed for such a length of time that, in the exercise of ordinary care, the business establishment should have known of the condition; or (b) The condition occurred with regularity and was therefore foreseeable."  Fla. Stat. § 768.0755(1).

Donnelly argues that Wal-Mart had both actual and constructive knowledge of the spilled liquid in this case.

      i.      Actual Knowledge

Donnelly first argues that Wal-Mart had actual knowledge of the spilled liquid because the surveillance video showed an employee walk past the aisle where the spill was before she fell.  Donnelly contends that the district court impermissibly viewed the facts in Wal-Mart's favor in finding that the Wal-Mart employee shown in the video could not have seen the puddle Donnelly slipped on, and by rejecting her argument that the employee could have seen a "trail" of water starting on the side of the aisle the employee walked past, even if he could not see the puddle of water Donnelly slipped on.

The district court carefully reviewed the video of the incident and found that the video is not evidence a reasonable juror could rely on to find that Wal-Mart had actual knowledge of the spill for six reasons.  The court explained:

8

First, . . . [t]he alleged employee moves from right to left at an extremely high rate of speed and, in less than the blink of an eye, the employee's view of the spill is blocked by two shoppers with shopping carts. Second, because the employee is moving quickly while pulling a heavy cart, the Court is unable to reasonably infer that the employee's vision was directed towards the spill in lieu of the direction of his travel. Third, the site of the spill was extremely far from the employee's perpendicular path. Fourth, the site of the spill was obscured, at this time, by the body and cart of the shopper who spilled the liquid. Fifth, the shopper who spilled the liquid took several minutes to actually see the spill even though she was in close proximity to it. Sixth, it is undisputed that the dangerous substance was "a watery liquid" and it looked like "water," thus, it would have been difficult to see even if the employee in the video was *not* moving at a high rate of speed at a great distance.

The district court also rejected Donnelly's argument that the passing employee had actual knowledge of the dangerous condition because he could have seen a trail of liquid which allegedly started near the end of the chip and bottled water aisle the employee walked past. The district court pointed out that Donnelly slipped on the puddle of accumulated liquid at the opposite end of the aisle, not on the trail of liquid. Even if we considered the trail of liquid as part of the dangerous condition that injured Donnelly, the video shows customers with their loaded shopping carts parked at the very location the supposed trail would have started as the employee walks by, blocking his view.

Ultimately, we agree with the district court that Donnelly's argument that the alleged employee saw the spill Donnelly slipped on or a trail of water leading to that spill is pure speculation, which is not enough to survive a summary

9

judgment motion. "Conclusory allegations and speculation are insufficient to create a genuine issue of material fact." *Glasscox v. City of Argo*, 903 F.3d 1207, 1213 (11th Cir. 2018); *see also Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) ("Speculation does not create a genuine issue of fact; instead it creates a false issue, the demolition of which is a primary goal of summary judgment." (quotation omitted)). "[A]n inference is not reasonable if it is 'only a guess or a possibility,' for such an inference is not based on the evidence but is pure conjecture and speculation." *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1322 (11th Cir.1982) (quotation omitted).

Donnelly points to no other evidence that any Wal-Mart employee saw the liquid on the floor before her fall. In fact, Donnelly herself, who had a much better vantage point and opportunity to see the spill than any Wal-Mart employee, did not see the puddle until after she fell and even then with difficulty. Further, the Wal-Mart employee seen in the video was not identified in this case, and as the district court pointed out it is unclear whether the employee was even on duty during the incident. There is no evidence of what that employee saw during that time except for the video evidence. And even viewing the video in Donnelly's favor, we conclude that a reasonable jury could not find, based on the record evidence, that Wal-Mart had actual knowledge of the spilled liquid.

### ii.    Constructive Knowledge

Donnelly next argues that Wal-Mart had constructive knowledge of the dangerous condition because the same video evidence discussed above shows a Wal-Mart employee in the vicinity of the incident.

Donnelly cites a series of non-binding slip and fall cases, applying different substantive laws, for the proposition that evidence of an employee in the vicinity of a dangerous condition is sufficient evidence of constructive knowledge to survive summary judgment.  We do not find Donnelly's argument persuasive for two reasons.  First, Donnelly does not explain how her "employee in the vicinity" argument satisfies her burden under Fla. Stat. § 768.0755(1) to show that Wal-Mart had constructive knowledge of the dangerous condition through the methods dictated in subparagraphs (1)(a) and (1)(b) (requiring proof of constructive knowledge through evidence of the amount of time the condition existed or through evidence the condition occurred with regularity).  Second, Donnelly's argument is undermined because the alleged employee shown on the video was not in the immediate vicinity of the spill; rather, he was walking past the chip and bottled water aisle by the opposite end of the aisle from where the spill was located.[5]

---

[5]  Though the cases Donnelly cites in support of her argument use the term "vicinity," they give the term a much different meaning than Donnelly seems to suggest.  *See, e.g.*, *Aponte v. Royal Caribbean Cruise Lines, Ltd.*, 739 F. App'x 531, 536 (11th Cir. 2018) (per curiam)

11

B.    Donnelly's Motion to Amend

Donnelly next argues that the district court erred in denying her motion for leave to amend her complaint, which sought to plead a separate common law negligence theory—that Wal-Mart used unsafe, slippery flooring.[6] First, she maintains that she did not need to amend her complaint because the slipperiness of Wal-Mart's floors was "always at issue in the case." Second, she contends that even if she was required to seek leave to amend, the district court abused its discretion in denying her request to do so.

After the time for amendment as a matter of course has expired, a plaintiff may only amend her complaint with "the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a). Although "[t]he court should freely give leave when justice so requires," *id.*, it may deny leave on "numerous grounds"

_____

(holding in a maritime case that a reasonable factfinder could find sufficient notice when a crewmember was in the "immediate vicinity" of large puddle of soap "at his feet"); *Alterman Foods, Inc. v. Ligon*, 272 S.E.2d 327, 330 (Ga. 1980) (explaining that under Georgia law notice can be found if defendant is in the "immediate area" of the dangerous condition).

[6] Wal-Mart argues that we do not have jurisdiction to consider this issue because Donnelly did not reference the district court's order denying her motion for leave to amend in her notice of appeal. We disagree. Where, as here, "a notice of appeal designates the final, appealable order—and does not identify specific parts of that order for appeal—we have jurisdiction to review that order and any earlier interlocutory orders that produced the judgment." *Auto. Alignment & Body Serv., Inc. v. State Farm Mut. Auto. Ins. Co.*, 953 F.3d 707, 724–25 (11th Cir. 2020). Consequently, we have jurisdiction to review the district court's order denying Donnelly's motion for leave to amend her complaint even though she did not specifically designate the order in her notice of appeal, because it was an earlier interlocutory order that produced the final judgment on appeal. *See id.* at 723; *Barfield v. Brierton*, 883 F.2d 923, 930–31 (11th Cir. 1989) ("[T]he appeal from a final judgment draws in question all prior non-final orders and rulings which produced the judgment.").

12

such as "undue delay, undue prejudice to the defendants, and futility of the amendment." *Abramson v. Gonzalez,* 949 F.2d 1567, 1581 (11th Cir. 1992). Further, because Donnelly filed her motion after the scheduling order's deadline for amendments, she must show good cause why the district court should have modified its scheduling order to grant her leave to amend her complaint. *See* Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."); *Brewer-Giorgio v. Producers Video, Inc.*, 216 F.3d 1281, 1284 (11th Cir. 2000) (finding no abuse of discretion in district court's denial of leave to amend on grounds of undue delay, where movant failed to show good cause for delay), *abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010); *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998) (per curiam) ("If we considered only Rule 15(a) without regard to Rule 16(b), we would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure.").

"The decision whether to grant leave to amend is committed to the sound discretion of the trial court." *See Shipner v. E. Air Lines, Inc.*, 868 F.2d 401, 406 (11th Cir. 1989). We review a district court's denial of a motion for leave to amend under Rule 15 for abuse of discretion. *Oravec*, 527 F.3d at 1231. "A district court has not abused its discretion when the court has 'a range of choices'

13

and the court's choice 'does not constitute a clear error of judgment.'" *Vanderberg v. Donaldson*, 259 F.3d 1321, 1326 (11th Cir. 2001) (quotation omitted).

The district court set June 15, 2019 as the deadline for amendments to pleadings. On August 27, 2019, seventy-four days after the pleading amendments deadline and after significant discovery, Donnelly moved to amend her complaint to assert a new theory of liability—that Wal-Mart was negligent for "failing to install, maintain, and provide safe flooring surfaces on its premises." The district court denied Donnelly's motion in a paperless order, stating that "the amended pleadings deadline passed on June 15, 2019."

We are not persuaded that Donnelly's amendment was "prophylactic" and merely providing "support" for the negligence theory already asserted in her operative complaint. The operative complaint specifically alleged that the "dangerous condition" that caused Donnelly's fall was "a foreign slippery substance on the floor" of Wal-Mart's store. It did not allege that her fall was caused or contributed to by the flooring itself. Rather, Donnelly's amendment sought to add a new theory of negligence and she failed to establish good cause for the belated amendment. Under these circumstances, the district court did not abuse its discretion in denying Donnelly's motion.

14

### III.    Conclusion

For these reasons, we affirm the district court's grant of summary judgment to Wal-Mart.

**AFFIRMED.**