EVANDER, J.
In this sinkhole loss case, the trial court entered final judgment in favor of Tower Hill Signature Insurance Company (“Tower Hill”), following á jury trial, on a breach of contract action initiated by insured, Jesse Sanchez. We affirm the judgment, without discussion, to the extent it denies Sanchez’ claim .that Tower Hill breached the subject insurance policy by failing to approve a contract for .subsurface, repairs presented by Sanchez. However, we reverse the judgment to the extent it denies Sanchez’ claim that Tower Hill failed to fully pay for the above-ground sinkhole damages. We conclude that the trial court erroneously instructed the jury that Tower Hill could be held liable for breach of the insurance contract only if it failed to pay the actual cash value of the above-ground damages “at the time of the sinkhole loss,” and further erred by precluding Sanchez from introducing evidence of post-suit payments made by Tower Hill.
Sanchez owned a house that was insured through a homeowner’s insurance policy *1213 issued by Tower Hill for the period of July 7, 2009 through July 7, 2010. Sanchez’ policy included an optional sinkhole loss endorsement that provided coverage in the event of sinkhole loss to the insured property. Under the policy, Tower Hill was obligated to pay, subject to applicable poli•cy limits, the “actual cash value of the damaged property.”
On October 30, 2009, Sanchez discovered damage to his home including, but not limited to, physical damage to the walls and floors of the residence. A sinkhole loss claim was timely submitted by Sam chez to Tower Hill on or about November 9, 2009. Tower Hill retained SDII Global Corporation (“SDII”) to perform an investigation of the residence. SDII concluded that a sinkhole loss, as defined by section 627.706, Florida Statutes (2009), had occurred and recommended that certain subsurface repairs be performed. Tower Hill also retained the services of an adjuster, Brad Bates, to estimate the amount of above-ground damages at the Sanchez residence. Bates estimated that the above-ground damages totaled $15,106.37. A check in that amount was remitted by Tower Hill to Sanchez shortly thereafter.
Sanchez disputed Tower Hill’s estimate for the above-ground damages as well as SDH’s recommendations regarding subsurface repairs. He hired Florida Testing and Environmental, Inc.. (“FTE”), to review SDH’s recommendation regarding subsurface repairs,, and retained Advance Pier Technology to prepare an estimate for the above-ground damages. Suffice it to say, the estimates prepared on behalf of Sanchez were considerably higher than those prepared on behalf of Tower Hill.[1]
Ultimately, on May 20, .2011, Sanchez filed suit for breach of the insurance contract. In his amended complaint, Sanchez alleged that Tower Hill “failed and refuses to pay all benefits to which. [Sanchez] is entitled for his loss.” On August 8, 2011, Tower Hill served its answer, asserting that Sanchez had been paid all of the benefits due and .owing. Significantly, one and one-half months prior to filing its answer, Tower Hill had retained Restoration Specialists to provide another estimate regarding the above-ground damages to the Sanchez residence. In its June 22, 2011 report, Restoration Specialists estimated the above-ground damages to be $31,070.72.
Approximately nine months after filing its answer, Tower Hill remitted two additional checks to Sanchez . totaling $16,001.91. This sum represented the difference between the amount of damages estimated by Restoration Specialists and the amount of monies initially paid by Tower Hill for above-ground damages pursuant to the estimate prepared by Brad Bates. The checks and accompanying letter did not include any language suggesting that the additional monies were being offered in an attempt to compromise or settle Sanchez’ suit. Rather, the cover letter stated:
These payments represents [sic] additional amounts for -the actual cash value of cosmetic repairs following the inspection and estimate completed by Restoration Specialists.[2]
Prior to trial, Tower Hill filed a motion in limine, seeking to exclude any statements, testimony, or reference by counsel or a witness regarding the additional post- *1214 litigation payments made by Tower Hill based on Restoration Specialist’s estimate. The trial judge granted the motion, believing that these tendered payments constituted a settlement offer.
At trial, most of the testimony centered on the extent of the subsurface repairs necessary to remediate Sanchez’ sinkhole loss. Sanchez did present the testimony of his expert on above-ground damages. Sanchez’ expert’s opinion was vigorously challenged by Tower Hill. Meanwhile, Tower Hill’s litigation claims specialist, Tim Ferguson, testified that the $15,106.37 paid by Tower Hill represented the actual cash value of the above-ground damages “at the time of loss.” Sanchez was precluded from cross-examining Ferguson regarding the post-suit payments tendered by Tower Hill.
At the conclusion of the presentation of evidence and closing argument, the trial court instructed the jury that Sanchez had the burden of proof to establish, by the greater weight of the evidence, that Tower Hill breached the insurance contract by failing to pay the actual cash value of the damaged property at the time of the sinkhole loss sufficient to repair the above-ground sinkhole damage. Consistent with this jury instruction, the verdict form included the following question:
Did the Plaintiff, Jesse Sanchez, prove by the greater weight of the evidence that Defendant, Tower Hill Signature Insurance Company, breached the policy of insurance by failing to pay the actual cash value (ACV) of the damaged property at the time of the sinkhole loss sufficient to repair the above ground sinkhole damage?
Sanchez objected to the term “at the time of the sinkhole loss” in the jury instruction and the verdict form, correctly observing that the insurance policy did not contain this language.
We conclude that the trial court erred in its utilization of the “at the time of the sinkhole loss” language. The policy issued by Tower Hill contains no such limitation. Indeed, the policy specifically provides:
We insure for direct physical loss to property ... caused by a “sinkhole loss”....
The trial court’s instruction wrongly suggested to the jury that Tower Hill’s obligation was limited to paying for only those damages that had manifested themselves on or about the date Sanchez made his claim. For this reason, we hold that the trial court abused its discretion when it granted the jury instruction using the additional language not found in Sanchez’ insurance policy. See Morton Roofing, Inc. v. Prather, 864 So.2d 64, 68 (Fla. 5th DCA 2003) (“The trial court’s decision to give a particular instruction will not be reversed ‘unless the error complained of resulted in a miscarriage of justice or the instruction was reasonably calculated to confuse or mislead the jury.’ ” (quoting Barbour v. Brinker Fla., Inc., 801 So.2d 953, 959 (Fla. 5th DCA 2001))).
Furthermore, the harm caused by the erroneous jury instruction and verdict form was compounded by the erroneous exclusion of evidence of post-suit payments tendered by Tower Hill. Section 90.408, Florida Statutes (2011), provides that “[e]vidence of an offer to compromise a claim which was disputed as to validity or amount ... is inadmissible to prove liability ... for the claim or its value.” However, in the instant case, there was no language in the cover letter sent with the post-suit checks or on the checks themselves that would support a finding that the tendered monies evidenced an offer to compromise Sanchez’ claim. Rather, as stated in the accompanying cover letter, the checks represented payment of addi *1215 tional amounts for- the actual cash value of above-ground sinkhole damages. As such, they could be construed as an admission by Tower Hill that the above-ground damages were greater than that initially estimated by Brad Bates.
As a result of the trial court’s ruling, the jury was precluded from learning that Tower Hill’s own agent had concluded, over two years prior to trial, that the cost of repairs for the above-ground damages exceeded $31,000.00. This evidence would have been supportive of Sanchez’ argument that the jury should reject Tower Hill’s contention that it had fully complied with its obligation to pay for above-ground damages.
Accordingly, Sanchez is entitled to a new trial on the issue of whether Tower Hill breached the insurance contract by failing to pay the actual cash value of the above-ground damages -to his residence caused by the sinkhole loss.
AFFIRMED, in part; REVERSED, in part; REMANDED.
TORPY and BERGER, JJ., concur.

. The parties did participate in the statutorily-authorized neutral evaluation process. See § 627.7074, Fla. Stat. (2009). The neutral evaluator’s recommended scope and cost for subsurface repair? fell between the estimates proposed by SDII and FTE.

. The checks were never deposited by Sanchez.